594 A.2d 121

**Andrew C. BOYER et al.**

v.

**STATE of Maryland et al.**

**No. 125, Sept. Term, 1989.**

Court of Appeals of Maryland.

Aug. 26, 1991.

**560**

Dean C. Kremer (Christopher K. Mangold, Koonz, McKenney, & Johnson, all on brief), Landover, for petitioners.

Carmen M. Shepard, Asst. Atty. Gen. (Steven E. Leder, George G. Tankard, Lord & Whip, all on brief), Baltimore, John L. Ridge, Jr. (Montedonico & Mason, Chartered, both on brief), Rockville, for respondents.

Stephen C. Orenstein, Upper Marlboro, amicus curiae, for Maryland Chiefs of Police Ass'n.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and COLE * and ADKINS **, Associate Judges of the Court of Appeals (retired).

ELDRIDGE, Judge.

This case involves the possible liability of law enforcement officers, the State of Maryland, and Charles County for injuries sustained by motorists struck by a suspected drunk driver who was being pursued by the officers in a high-speed chase.

### I.

The case is before us on appeal from orders granting the defendants' motions for summary judgment. The orders were based on the complaint, the motions, and the responses thereto. The underlying facts for purposes of the trial court's rulings on the summary judgment motions were essentially those alleged by the plaintiffs.

On August 9, 1984, at about 11:30 a.m., Maryland State Police Trooper Robert C. Titus was driving his police car southbound on U.S. Route 301 in Waldorf, Maryland. He observed another vehicle being driven southbound on Route 301 in an unsafe and erratic manner, and Trooper Titus suspected that the driver of the other vehicle was intoxicated. Both the other vehicle and Trooper Titus's police car stopped at a red light. While so stopped, Trooper Titus got out of his car, approached the other vehicle, and instructed the driver, Richard Milton Farrar, to pull over to the shoulder of the road on the other side of the intersection as soon as the light turned green. Trooper Titus then returned to

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

his police car. When the traffic light turned green, Mr. Farrar, instead of pulling over onto the shoulder of the road as he had been instructed, accelerated his vehicle and drove south on Route 301 at a high rate of speed. Trooper Titus immediately began pursuing Mr. Farrar. Deputy sheriffs from the Charles County Sheriff's Office and other Maryland State police officers joined Trooper Titus in the chase of Mr. Farrar.

The plaintiffs claimed that the pursuit of Mr. Farrar continued for approximately seven miles on Route 301 through heavy traffic and numerous intersections at high speeds. The plaintiffs asserted that the police officers chasing Mr. Farrar reached speeds in excess of 100 miles per hour. The plaintiffs stated that "[d]espite the presence of numerous other slow moving vehicles on the road, the police officers in question did not break off their pursuit but rather increased their speed and continued the pursuit despite the clear and present danger of so doing." In addition, the plaintiffs alleged that Trooper Titus failed to "activate immediately all of the emergency equipment on his police car" and failed to "adhere to the acceptable police procedures and policies in attempting to apprehend defendant Farrar."

The pursuit of Mr. Farrar ended tragically when the suspected drunk driver's vehicle hit the rear of another vehicle at the intersection of U.S. Route 301 and Maryland Route 225 in the town of La Plata. The struck vehicle was occupied by Mary Jackisch Boyer and her husband, Joseph A. Boyer. Mrs. Boyer died at the scene of the accident. Mr. Boyer was hospitalized and died on October 26, 1984, as a result of injuries sustained in the accident.

The plaintiffs in the case, the surviving sons of Mr. and Mrs. Boyer, filed in the Circuit Court for Prince George's County a complaint containing eleven counts, naming the State of Maryland, the County Commissioners of Charles County, Trooper Titus, the Charles County "Sheriff's De-

partment" and Richard Milton Farrar as defendants.[1] The Circuit Court for Prince George's County determined that venue was improper and transferred the case to the Circuit Court for Charles County.

Counts I through V of the complaint are survival claims and counts VI through X are wrongful death claims. Count XI contains a demand for punitive damages. The plaintiffs alleged in counts I and VI that Trooper Titus was grossly negligent "in failing to arrest defendant Farrar while defendant Farrar was stopped at a red light; ... in pursuing defendant Farrar, a suspected drunk driver, at an excessively high rate of speed through a heavy traffic area; in continuing to recklessly pursue defendant Farrar at extremely high and dangerous rates of speed; in failing to activate immediately all of the emergency equipment on his police car so as to warn other motorists ...; and in ... failing to adhere to the acceptable police procedures and policies...." The plaintiffs also asserted in counts I and VI vicarious liability on the part of the State of Maryland for Trooper Titus's negligence and on the part of the Charles County "Sheriff's Department" and the County Commissioners of Charles County for the asserted "gross negligence" of the Charles County deputy sheriffs involved in the high-speed chase of Mr. Farrar.

The plaintiffs claimed in counts II and VII that the State of Maryland "fail[ed] to exercise due care in selecting, hiring, retaining, training and supervising defendant Titus...." Similarly, counts III, IV, VIII and IX asserted that the County Commissioners of Charles County and the Charles County "Sheriff's Department" negligently "hired, retained, trained and supervised the officers and employees of the Charles County Sheriff's Department...." Counts V and X of the complaint alleged that Richard Milton Farrar was negligent for, among other things, failing to

---

**1.** Neither the deputy sheriffs nor the other State police officers who had assisted Trooper Titus were named as defendants. The only police officer named as a defendant was Trooper Titus.

obey the speed limit and operating his vehicle while intoxicated.

The principal statutory ground invoked by the plaintiffs for the asserted liability of the State of Maryland was the Maryland Tort Claims Act, which at the time of the accident in this case waived the State's governmental immunity in, *inter alia*, "[a]n action to recover damages caused by the negligent maintenance or operation of a motor vehicle by a State employee." Maryland Code (1974, 1984 Repl.Vol.), § 5–403(a)(1) of the Courts and Judicial Proceedings Article.[2] Furthermore, the plaintiffs alleged that they had complied with the procedural requirements for bringing an action under the Maryland Tort Claims Act. In connection with their claim against the State of Maryland, as well as their claims against the County Commissioners of Charles County and the Charles County "Sheriff's Department," the plaintiffs also relied on Code (1977, 1987 Repl. Vol.), § 19–103(c)(1) of the Transportation Article, which provides that the owner of an emergency vehicle is liable, up to certain limits, "for any damages caused by a negligent act or omission of an authorized operator while operating the emergency vehicle in the performance of emergency service...."[3] The plaintiffs also sought to impose liability on

---

2. Effective October 1, 1984, the Maryland Tort Claims Act was moved from the Courts and Judicial Proceedings Article of the Code to the State Government Article of the Code. *See* Ch. 284 of the Acts of 1984; Code (1984), § 12–104 of the State Government Article. While the October 1, 1984, change involved some modifications in wording, they are not pertinent in the present case. By Ch. 538 of the Acts of 1985, effective July 1, 1985, the General Assembly re-wrote the Maryland Tort Claims Act, repealed the provisions listing specified categories of cases for which governmental immunity was waived, and generally waived the State's tort immunity subject to specified exclusions and limitations. *See* Code (1984, 1990 Cum.Supp.), § 12–104 of the State Government Article. *See also* the discussion in *Kee v. State Highway Admin.*, 313 Md. 445, 545 A.2d 1312 (1988).

3. Section 19–103, at the time of the accident in this case, stated as follows:

   "**§ 19–103. Liability for negligent operation of emergency vehicle.**

the County Commissioners of Charles County and the Charles County "Sheriff's Department" on the theory that the County Commissioners and a county agency known as the "Sheriff's Department" were the employers of the

(a) *Definitions.*—(1) In this section, the following words have the meanings indicated.

(2) 'Emergency vehicle' has the same meaning as in § 11–118 of this article.

(3) 'Emergency service' means:

(i) Responding to an emergency call;

(ii) Pursuing a violator or a suspected violator of the law; or

(iii) Responding to, but not while returning from, a fire alarm.

(b) *Liability of operator.*—(1) An operator of an emergency vehicle, who is authorized to operate the emergency vehicle by its owner or lessee, is immune from suit in his individual capacity for any damages resulting from a negligent act or omission while operating the emergency vehicle in the performance of emergency service as defined in subsection (a) of this section.

(2) This subsection does not provide immunity from suit to an operator for a malicious act or omission or for gross negligence of the operator.

(c) *Liability of owner or lessee.*—(1) An owner or lessee of an emergency vehicle, including a political subdivision, is liable to the extent provided in subsection (d) of this section for any damages caused by a negligent act or omission of an authorized operator while operating the emergency vehicle in the performance of emergency service as defined in subsection (a) of this section.

(2) This subsection does not subject an owner or lessee to liability for the operator's malicious act or omission or for the operator's gross negligence.

(3) A political subdivision may not raise the defense of governmental immunity in an action against it under this section.

(d) *Limitation upon amount of liability.*—Liability under this section for self-insured jurisdictions is limited to the amount of the minimum benefits that a vehicle liability insurance policy must provide under § 17–103 of this article, except that an owner or lessee may be liable in an amount up to the maximum limit of any basic vehicle liability insurance policy it has in effect exclusive of excess liability coverage.

(e) *Effect of judgment.*—A judgment under this section against the owner or lessee of an emergency vehicle constitutes a complete bar to any action or judgment deriving from the same occurrence against the operator of the emergency vehicle."

By Ch. 546 of the Acts of 1990, § 19–103 was rewritten, and some of its provisions were placed in Code (1974, 1989 Repl.Vol., 1990 Cum. Supp.), § 5–399.5 of the Courts and Judicial Proceedings Article. In this opinion, we shall refer to the pre–1990 version of § 19–103.

deputy sheriffs and liable under the principle of respondeat superior.

With regard to their claim against Trooper Titus individually, the plaintiffs relied upon § 21–106 of the Transportation Article of the Code which extends certain privileges to drivers of emergency vehicles but which specifies in subsection (d) that "[t]his section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons." [4] The plaintiffs also invoked § 19–103(b) of the Transportation Article which provides that the immunity from suit granted by § 19–103 to the operator of an emergency vehicle does not apply where the

---

**4.** Section 21–106 provides as follows:

"**§ 21–106. Emergency vehicles.**

(a) *Circumstances for which privileges granted.*—Subject to the conditions stated in this section, the driver of an emergency vehicle registered in any state may exercise the privileges set forth in this section while:

(1) Responding to an emergency call;

(2) Pursuing a violator or suspected violator of the law; or

(3) Responding to, but not while returning from, a fire alarm.

(b) *Enumeration of privileges.*—Under the circumstances stated in subsection (a) of this section, the driver of an emergency vehicle may:

(1) Park or stand without regard to the other provisions of this title;

(2) Pass a red or stop signal, a stop sign, or a yield sign, but only after slowing down as necessary for safety;

(3) Exceed any maximum speed limit, but only so long as the driver does not endanger life or property; and

(4) Disregard any traffic control device or regulation governing direction of movement or turning in a specified direction.

(c) *Use of audible and visual signals required.*—(1) The privileges set forth in this section apply only while the emergency vehicle is using audible and visual signals that meet the requirements of § 22–218 of this article, except that an emergency vehicle operated as a police vehicle need not be equipped with or display the visual signals.

(2) The driver of an emergency vehicle may not use flashing lights or a bell, siren, or exhaust whistle while returning from an emergency call or fire alarm, except that fire apparatus carrying standing firemen may use flashing lights that are visible only to the rear.

operator is guilty, *inter alia*, of "gross negligence." [5]   In addition, the plaintiffs contended that, under § 16–205.-1(b)(2) of the Transportation Article, Trooper Titus had a duty to detain Mr. Farrar when he approached him at the stop light on Route 301, and that Trooper Titus was liable for his alleged breach of that duty.[6]   Finally, the plaintiffs relied on cases holding that, absent statutory immunity, the driver of an emergency vehicle is "ordinarily" liable for his negligence in the operation of the vehicle. *See, e.g., James v. Prince George's County*, 288 Md. 315, 328, 418 A.2d 1173 (1980).

After this case was transferred to the Circuit Court for Charles County, and after answers were filed, two motions for summary judgment were filed, one on behalf of the State of Maryland and Trooper Titus, and the other on behalf of the County Commissioners of Charles County and the Charles County "Sheriff's Department."

The motion for summary judgment on behalf of the State and Trooper Titus, along with the supporting memoranda, was based upon two grounds only: (1) the State and Trooper Titus were entitled to governmental immunity; (2) "the law imposes *no* tort duty on Trooper Titus (or the State of

---

(d) *Driver not relieved from duty of care.*—This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons."

**5.**  *See* footnote 3, *supra.*

**6.**  Section 16–205.1(b)(2) states in pertinent part as follows:
"Except as provided in subsection (c) of this section, if a police officer stops or detains any individual who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated, while under the influence of alcohol, or in violation of an alcohol restriction, and who is not unconscious or otherwise incapable of refusing to take a chemical test for alcohol, the police officer shall:
(i) Detain the individual;
(ii) Request that the individual permit a chemical test to be taken of the individual's blood or breath to determine the alcoholic content of the individual's blood;
(iii) Advise the individual of the administrative penalties that shall be imposed for refusal to take the test...."

Maryland) for injuries to the plaintiffs resulting from the acts of Mr. Farrar." (Emphasis in original). In asserting that the State was entitled to governmental immunity, the State defendants pointed to the pre-1985 language of the Maryland Tort Claims Act which waived governmental immunity only for certain types of acts, including the "negligent ... operation of a motor vehicle by a State employee." They argued that the alleged negligence of Trooper Titus in deciding not to detain Mr. Farrar at the stop light, in commencing the high speed chase, and in continuing the high speed chase, did not constitute "negligent ... operation of a motor vehicle." It was claimed that the doctrine of public official immunity was applicable to the alleged negligence of Trooper Titus. Under that doctrine, one "is relieved of liability for his negligent acts ... [if he] is a *public official* rather than a mere *government employee or agent* ... [and if] his tortious conduct occurred while he was performing *discretionary*, as opposed to *ministerial*, acts in furtherance of his official duties." *James v. Prince George's County, supra*, 288 Md. at 323, 418 A.2d at 1178 (emphasis in original). *See Clea v. City of Baltimore*, 312 Md. 662, 672–673, 541 A.2d 1303, 1308 (1988); *Ashburn v. Anne Arundel County*, 306 Md. 617, 620–622, 510 A.2d 1078, 1080 (1986).

In arguing that, even if the State and Trooper Titus were not protected by immunity, Trooper Titus nevertheless owed no duty to the Boyers, the State defendants relied exclusively on *Ashburn v. Anne Arundel County, supra*, 306 Md. at 624, 626–635, 510 A.2d at 1081, 1082–1087, which held that, when a police officer makes the discretionary decision as to whether a criminal suspect should be apprehended, the police officer who decides not to apprehend the suspect ordinarily owes no duty to third persons who may thereafter be injured by the suspect.

The motion for summary judgment on behalf of the County Commissioners of Charles County and the Charles County "Sheriff's Department" also relied on governmental immunity and the claimed lack of any duty owed to the

Boyers. With regard to the waiver of governmental immunity contained in § 19–103(c) of the Transportation Article, the County Commissioners principally contended that the allegedly negligent pursuit of Mr. Farrar by the deputy sheriffs did not constitute negligence "while operating an emergency vehicle." The motion for summary judgment also took the position that "[t]he 'Charles County Sheriff's Department' is not a legal entity capable of being sued."

Neither of the motions for summary judgment questioned the sufficiency of the plaintiffs' allegations of negligence. At no time in the trial court, or in this Court, did the defendants argue that, even if there were no immunity and even if the police officers owed a duty to the Boyers, the plaintiffs' allegations of negligence were insufficient to set forth a breach of that duty. Furthermore, there is no indication from the record that the circuit judge questioned the sufficiency of the plaintiffs' allegations of simple negligence. On the other hand, in ruling on the motions for summary judgment, the circuit court did hold that the plaintiffs' allegations were insufficient to charge Trooper Titus with gross negligence.

The circuit court issued a brief order granting the motions for summary judgment on behalf of the State of Maryland, the County Commissioners of Charles County, and the Charles County "Sheriff's Department," apparently relying on one or the other of the grounds set forth in the motions. In a separate memorandum and order, the circuit court granted summary judgment for Trooper Titus specifically on the ground that the police officer was entitled to immunity under § 19–103(b) of the Transportation Article, which confers upon the operator of an emergency vehicle immunity "from suit in his individual capacity for any damages resulting from a negligent act or omission while operating the emergency vehicle," as long as the operator is not guilty of malice or gross negligence. The circuit court certified the summary judgment orders as final pursuant to

Maryland Rule 2–602(b).[7]

The plaintiffs appealed to the Court of Special Appeals which affirmed. *Boyer v. State*, 80 Md.App. 101, 560 A.2d 48 (1989). The Court of Special Appeals held that Trooper Titus was immune from suit under the doctrine of public official immunity. 80 Md.App. at 106, 560 A.2d at 50. The appellate court also, apparently, held that the deputy sheriffs, if they had been sued, would have been entitled to public official immunity. The appellate court then reasoned, relying upon *Bradshaw v. Prince George's County*, 284 Md. 294, 396 A.2d 255 (1979), that "[t]he County and the State are also without liability because the alleged tortious conduct on which the suit against them is based results from actions of an individual who is personally immune." *Boyer v. State, supra*, 80 Md.App. at 106, 560 A.2d at 50. Thereafter, we granted the plaintiffs' petition for a writ of certiorari.[8]

## II.

First, we address the claimed liability of the County Commissioners of Charles County and the Charles County "Sheriff's Department."

## A.

As previously mentioned, the plaintiffs in part base their action against the County Commissioners and the "Sheriff's Department," in counts I and VI of their complaint, on the

---

7. The defendant Farrar was not involved in the motions for summary judgment, and the action against him is apparently still pending in the circuit court.

8. The plaintiffs in their petition for a writ of certiorari did not present any questions involving counts II, III, IV, VII, VIII and IX of the complaint, alleging negligent hiring, retaining, training and supervision of Trooper Titus and the deputy sheriffs. Therefore, we shall affirm the summary judgment orders with respect to counts II, III, IV, VII, VIII, and IX, and we shall only consider whether summary judgment with respect to counts I, VI, and XI of the complaint was proper.

doctrine of respondeat superior and the assumption that deputy sheriffs are county employees and that the "Sheriff's Department" is a county agency.[9]

█ It is clear, however, that under Maryland law the Sheriff and deputy sheriffs of Charles County are State employees. *Rucker v. Harford County*, 316 Md. 275, 281, 558 A.2d 399, 402 (1989) ("The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State rather than local government employees. Because a deputy sheriff functions as the alter ego of the sheriff, and exercises the same authority, we reach the same conclusion with respect to deputy sheriffs"). *See also* the Maryland Tort Claims Act, Code (1984, 1990 Cum. Supp.), § 12–101(6) of the State Government Article, specifying that "State personnel" includes "a sheriff or deputy sheriff of a county or Baltimore City."

Therefore, to the extent that the County Commissioners of Charles County and any purported agency of Charles County are named as defendants based on a theory that they are liable as employers for the alleged negligence of the Charles County deputy sheriffs, the judgment in their favor was correct. *See Rucker v. Harford County, supra,* 316 Md. at 292, 558 A.2d at 407 ("counties and municipalities in Maryland are generally not liable under the doctrine of respondeat superior for the tortious acts of State officials or State employees acting in the scope of their employment"); *Clea v. City of Baltimore, supra,* 312 Md. at 668–

---

9. We are unaware of any statute, public general or public local, establishing an entity known as the Charles County "Sheriff's Department." The sheriff for each county is a constitutional officer under Art. IV, § 44, of the Constitution of Maryland. Neither the Constitution nor any other provision of law of which we are aware creates a governmental agency known as the "Sheriff's Department." Consequently, the motion for summary judgment on behalf of the Charles County "Sheriff's Department" correctly asserted that the "Sheriff's Department" is not an entity capable of being sued.

669, 541 A.2d at 1306.[10]

### B.

The plaintiffs' alternate ground for imposing liability upon the County Commissioners of Charles County for the alleged negligence of the deputy sheriffs is § 19–103(c) of the Transportation Article, which provides that the owner or lessee of an emergency vehicle is liable for the negligence of an authorized operator of the vehicle while operating the vehicle in the performance of an emergency service. This statute does not require that the operator of the emergency vehicle be an employee of the owner.

Charles County's principal argument as to why § 19–103(c) is inapplicable to the present case is that the alleged negligence of the deputy sheriffs in joining the pursuit and continuing the pursuit of Mr. Farrar was not negligence "while operating the emergency vehicle[s]" within the meaning of § 19–103(c). Both in the trial court and in this Court, Charles County argued that "the gravamen of the charge against Charles County is that [the deputy sheriffs] were negligent in responding to Trooper Titus's request for assistance, and electing to join in the pursuit of the fleeing Farrar. In determining the legal consequences of that action, the crucial factor is the officers' decision to maintain the pursuit rather than breaking it off. * * * [T]hat decision [does not] constitute a 'negligent act or omission ... while operating an emergency vehicle' within the meaning of § 19–103(c)." (Brief for the County Commissioners of Charles County, p. 2). Charles County's argument regard-

---

10. With regard to certain tort judgments based on the negligence of a sheriff or deputy sheriffs acting in the scope of employment, the Maryland Board of Public Works may pay the judgments out of moneys due the county involved, depending in large measure upon the type of activity in which the sheriff or deputy sheriffs were engaged. *See* Ch. 508 of the Acts of 1990; Code (1984, 1990 Cum. Supp.), §§ 12–405(5) and 12–501(a)(1)(iv) of the State Government Article. These provisions regarding the payment of judgments, however, do not authorize tort actions against counties based on the negligence of State personnel acting within the scope of employment.

ing § 19–103(c) is essentially the same as the State's argument with respect to the Maryland Tort Claims Act. The State has insisted that Trooper Titus's allegedly negligent decision to chase Mr. Farrar and his allegedly negligent decision to continue the high speed chase did not amount to the "negligent operation of a motor vehicle" under the pre–1985 language of the Maryland Tort Claims Act, Code (1974, 1984 Repl.Vol.), § 5–403(a)(1) of the Courts and Judicial Proceedings Article.

Preliminarily, we question the conclusion by Charles County and the State that the gravamen of the alleged negligence was limited to the decisions to pursue Mr. Farrar and to continue the pursuit. Instead, the alleged negligence involved the decisions to pursue and continue pursuit at speeds in excess of 100 miles an hour, through busy intersections, and without activating emergency equipment immediately.

■ Moreover, we disagree with Charles County's and the State's contention that a negligent decision to operate a motor vehicle in a particular manner under certain circumstances, and a negligent decision to continue operating the vehicle under those circumstances, does not constitute the negligent "operation of a motor vehicle." This Court has held that the statutory phrase " 'operate ... a motor vehicle' " is broad, and in fact is much "broader than the term 'drive.' " *See Thomas v. State,* 277 Md. 314, 317–319, 353 A.2d 256, 258 (1976), and cases there discussed. Other cases have held that a police officer's negligent decision to initiate and continue a high speed chase may constitute negligent "operation" of a vehicle within the meaning of waivers of immunity similar to § 19–103(c). *See, e.g., Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (1983); *Dickens v. Upper Chichester Tp.,* 123 Pa.Commw. 226, 553 A.2d 510; *Force v. Watkins,* 118 Pa.Commw. 87, 544 A.2d 114 (1988); *Mason v. Bitton,* 85 Wash.2d 321, 326–329, 534 P.2d 1360, 1364–1365 (1975). *But cf. Kelly v. City of Tulsa,* 791 P.2d 826, 828 (Okl.App.1990).

Negligent operation of a car is not limited to the negligent manipulation of the gas pedal, steering wheel, or brake pedal, such as involved in speeding, failure to pay attention to what may be in front of the vehicle, failure to apply the brakes, etc. A decision to operate or continue operating the car, when a reasonable person would not do so, clearly can be "negligent operation." For example, if one decides to operate or to continue operating a motor vehicle when he is dizzy or otherwise ill, he may be guilty of negligent operation. *Cf. Stumpf v. State Farm Mutual Automobile Ins. Co.*, 252 Md. 696, 702, 251 A.2d 362, 365 (1969) (person subject to epileptic seizures chose to drive car). A decision to operate a car or to continue operating a car knowing that the brakes are faulty may obviously constitute the "negligent operation" of the vehicle.

Therefore, we reject the arguments by Charles County and the State that the alleged negligence of the deputy sheriffs and Trooper Titus in commencing and maintaining a high speed chase was not negligence "while operating" or in "the operation" of motor vehicles.[11]

## C.

There is in this case, however, a problem with the plaintiffs' reliance upon § 19–103(c) as a basis for imposing liability upon Charles County. The plaintiffs did not allege in their complaint that the County Commissioners of Charles County owned the vehicles driven by the deputy sheriffs. Moreover, such an allegation was not made in any attachments to the summary judgment motions or the responses thereto. Charles County, in its motion for summary judgment, established a prima facie defense of gov-

---

11. We fully agree with the State, however, that Trooper Titus's allegedly negligent decision not to apprehend Mr. Farrar at the stop light was not negligence in the operation of a motor vehicle and thus was not within the waiver of immunity contained in the pre–1985 Maryland Tort Claims Act. The decision not to apprehend Mr. Farrar at the stop light had nothing to do with Trooper Titus's operation of his police car.

ernmental immunity. *See Kee v. State Highway Admin.*, 313 Md. 445, 460, 545 A.2d 1312, 1320 (1988). The plaintiffs attempted to rebut that defense by, *inter alia,* invoking § 19–103(c); however they overlooked a critical element for § 19–103(c) to be applicable. Consequently, we cannot conclude that the waiver of governmental immunity contained in § 19–103(c) applies to Charles County in this case.

Ordinarily, we would affirm the judgment in favor of Charles County on the ground that the plaintiffs failed to allege ownership of the deputy sheriffs' vehicles by Charles County. Nevertheless, the matter of vehicle ownership was not raised in the case until oral argument in this Court. Under these circumstances, the plaintiffs should have the opportunity of amending their complaint to allege, if they can, ownership of the vehicles by Charles County. As to the judgment in favor of Charles County, therefore, we shall remand in accordance with Maryland Rule 8–604(d).[12]

### III.

We now turn to the plaintiffs' contention that the circuit court erred in granting summary judgment in favor of Trooper Titus. For purposes of convenience, the asserted negligence of Trooper Titus can be divided into two categories: 1. the allegedly negligent decision not to apprehend Mr. Farrar at the red light but, instead, to instruct him to proceed through the light when it turned green and pull over on the other side of the intersection; 2. the allegedly negligent decisions to pursue and continue the pursuit of Mr. Farrar at high speeds, through busy intersections, without immediately activating emergency devices.

---

**12.** Charles County's contention that the deputy sheriffs owed no duty to the Boyers is the same as the argument made by the State and discussed in Part IV of this opinion. What is said there concerning the duty owed by Trooper Titus to the Boyers would also be applicable to the deputy sheriffs. Of course, if on remand the plaintiffs are unable to allege ownership of the deputy sheriffs' vehicles by Charles County, Charles County will be entitled to judgment, and, with regard to Charles County, no questions of duty owed or breach of duty need be reached.

A.

■ Under this Court's opinion in *Ashburn v. Anne Arundel County, supra,* it is clear that the decision not to apprehend Mr. Farrar at the red light cannot be a basis for imposing liability upon Trooper Titus. *Ashburn* held that a police officer, in deciding whether to apprehend a criminal suspect, is ordinarily protected from liability under the doctrine of public official immunity. In fact, *Ashburn* drew a sharp distinction between operating an emergency vehicle and the decision whether or not to apprehend a citizen, saying (306 Md. at 623–624, 510 A.2d at 1081):

"[In *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980),] the Court held that the operation of such an emergency vehicle 'is not ordinarily a discretionary act for which immunity will shield the driver from liability for negligence.' *Id.* at 328, 418 A.2d at 1180–81. The driving of an emergency vehicle, as in *James,* however, is different from making a decision as to whether a citizen shall be apprehended. When a police officer performs this function, he is acting in a discretionary capacity."

Moreover, we held in *Ashburn* that § 16–205.1(b)(2) of the Transportation Article, upon which the plaintiffs in the instant case also rely,[13] does not render inapplicable the principle of public official immunity with regard to a police officer's decision not to apprehend a suspected drunk driver. *Ashburn v. Anne Arundel County, supra,* 306 Md. at 624–626, 510 A.2d at 1081–1082.

■ As an alternative holding we took the position in *Ashburn* that, in making the decision not to apprehend a drunk driver, a police officer ordinarily owes no duty, enforceable by tort liability, to third persons who may thereafter be injured by the drunk driver. *Ashburn v. Anne Arundel County, supra,* 306 Md. at 624, 626–635, 510 A.2d at 1081, 1082–1087.

---

**13.** *See* footnote 6, *supra.*

Both holdings in *Ashburn* are dispositive of the plaintiffs' attempt to impose tort liability upon Trooper Titus for his allegedly negligent decision not to apprehend Mr. Farrar at the red light. No facts have been alleged in this case which would render inapplicable the ordinary immunity and lack of duty principles set forth in *Ashburn*.

### B.

■ As to the plaintiffs' claim that Trooper Titus was negligent in commencing and maintaining the high speed pursuit of Mr. Farrar, it is obvious that Trooper Titus is entitled to statutory immunity under § 19–103(b) of the Transportation Article. He is also, under the Maryland Tort Claims Act, not liable for damages.

Section 19–103(b) flatly renders the operator of an emergency vehicle "immune from suit ... for any damages resulting from a negligent act or omission while operating the emergency vehicle...." The pre–1985 language of the Maryland Tort Claims Act waived the State's tort immunity for "[a]n action to recover damages caused by the negligent ... operation of a motor vehicle by a State employee," and it rendered the State employee "not liable ... for any damages resulting from tortious conduct for which the State has waived its immunity under this subtitle...." *See* Code (1974, 1984 Repl.Vol.), §§ 5–403(a)(1) and 5–404(b) of the Courts and Judicial Proceedings Article. We have held in Part II B of this opinion that the alleged negligence in commencing and continuing the high speed chase of Mr. Farrar constituted the negligent operation of a motor vehicle. Thus, the immunity provision of § 19–103 and the non-liability provision of the Tort Claims Act are applicable to these allegations of negligent conduct by Trooper Titus.

■ The plaintiffs point out, however, that the immunity and non-liability provisions of § 19–103 and the Tort Claims Act do not apply if the State employee was grossly negligent, and they contend that their allegations were sufficient to charge Trooper Titus with gross negligence. We agree

with the circuit court that the allegations were insufficient to charge gross negligence.[14]

In order to charge Trooper Titus with gross negligence, the plaintiffs must have pled *facts* showing that Trooper Titus acted with a wanton and reckless disregard for others in pursuing Mr. Farrar. *See Nast. v. Lockett,* 312 Md. 343, 366–367, 539 A.2d 1113, 1124–1125 (1988); *Hughes v. State,* 198 Md. 424, 431–432, 84 A.2d 419, 422 (1951). The complaint stated that Trooper Titus was grossly negligent

"in pursuing Farrar, a suspected drunk driver, at an excessively high rate of speed through a heavy traffic area; in continuing to recklessly pursue defendant Farrar at extremely high and dangerous rates of speed; in failing to activate immediately all of the emergency equipment on his police car so as to warn other motorists of the foreseeable dangers to their health and safety created by defendant Titus's negligent and reckless pur-

---

**14.** It should be mentioned that the changes in the Maryland Tort Claims Act brought about by Ch. 538 of the Acts of 1985 included a change in the statutory language protecting a state employee who was acting in the scope of his employment, without malice or gross negligence, and engaged in an activity encompassed by the State's waiver of immunity. The pre–1985 language stated that a "judgment in tort for money damages against a State employee ... is a judgment against the State only and may not be executed against the employee in his individual capacity." Code (1974, 1984 Repl.Vol.), § 5–404(a)(3) of the Courts and Judicial Proceedings Article. The statutory language continued (§ 5–404(b)):

"*Employee not liable individually.*—A State employee who has acted within the scope of his public duties, absent malice or gross negligence, is not liable in his individual capacity for any damages resulting from tortious conduct for which the State has waived its immunity under this subtitle, even when the damages exceed the limits of the State's waiver of immunity."

The present language of the Tort Claims Act uses the word "immunity," with one pertinent provision stating that "State personnel shall have ... immunity from liability ...," Code (1984, 1990 Cum.Supp), § 12–105 of the State Government Article, and the other pertinent provision stating that "State personnel are immune from suit in the courts of the State and from liability in tort ...," Code (1974, 1989 Repl.Vol., 1990 Cum.Supp.), § 5–399.2(b) of the Courts and Judicial Proceedings Article. The significance of this 1985 change in language is a matter which we need not explore in this case.

suit; and in otherwise failing to adhere to the acceptable police procedures and policies in attempting to apprehend defendant Farrar."

Viewing the allegations in the light most favorable to the plaintiffs, we nevertheless hold that Trooper Titus's alleged conduct did not amount to gross negligence as a matter of law. The plaintiffs' allegations that Trooper Titus drove at high speeds on a road congested with traffic in an attempt to apprehend a suspected intoxicated driver do not indicate that he acted with wanton or reckless disregard for the safety of others. Although the complaint states that Trooper Titus did not "immediately" activate his emergency equipment and violated police procedures, these somewhat vague allegations do not support the conclusion that he acted with gross negligence. *See Breck v. Cortez*, 141 Ill.App.3d 351, 353–354, 359–361, 95 Ill.Dec. 615, 616–17, 620–21, 490 N.E.2d 88, 89–90, 93–94 (1986) (conduct of police officers did not amount to willful or wanton negligence, as a matter of law, where they pursued a vehicle observed driving recklessly without its headlights on at about 9 p.m., where the chase took place over eight miles on an interstate highway and a two-lane road, where the roads were wet but traffic was light to medium, and where the officers were driving substantially over the speed limit); *Bullins v. Schmidt*, 322 N.C. 580, 369 S.E.2d 601 (1988) (police officers did not act with conscious or reckless disregard for others when they pursued a car driving erratically at about 1 a.m. over eighteen miles at speeds of up to 100 miles per hour). *See also, Nast v. Lockett, supra*, 312 Md. at 367, 539 A.2d at 1125 (as a matter of law, evidence was insufficient to show that the defendant, who was driving under the influence of alcohol, was grossly negligent in the operation of her automobile). Therefore, because Trooper Titus did not act with wanton or reckless disregard for the safety of

others in pursuing Mr. Farrar, he was entitled to summary judgment.[15]

## IV.

Finally, we deal with the plaintiffs' claim against the State of Maryland under the Maryland Tort Claims Act.[16]

### A.

■ The ground invoked by the Court of Special Appeals for affirming the judgment in favor of the State is not

---

**15.** Our holding that the plaintiffs' factual allegations did not charge grossly negligent conduct by Trooper Titus is also dispositive of the plaintiffs' punitive damage claim in count XI of their complaint. The plaintiffs based their claim for punitive damages on the conclusory allegation that Trooper Titus was guilty of gross negligence, and our decision that the alleged conduct did not amount to gross negligence totally undercuts the plaintiffs' claim. Therefore, we need not decide whether a showing of gross negligence would be sufficient to support an award of punitive damages against a policeman in a case such as this. *See Schaefer v. Miller,* 322 Md. 297, 312–332, 587 A.2d 491, 498–509 (1991) (opinion of Judges Eldridge, Cole, and Chasanow). The circuit court's judgment with regard to count XI will be affirmed.

**16.** As mentioned earlier in this opinion, the plaintiffs' claim against the State is based on both the Maryland Tort Claims Act and on § 19–103 of the Transportation Article. In its brief in this Court, the State suggests that the waiver of governmental immunity in § 19–103 applies only to the political subdivisions of the State and not to the State itself. The plaintiffs, relying on statutory language and legislative history, vigorously contest the State's suggestion. They also point out that the definition of "emergency vehicle" in § 19–103(a) specifically incorporates the definition in § 11–118(1) of the Transportation Article which expressly encompasses "[v]ehicles of … State … law enforcement agencies."

We believe that it is clear that the grant of immunity to operators of emergency vehicles in § 19–103 includes a State police officer operating a State police car. The circuit court so held in this case, and we have agreed with that holding in Part III B of this opinion. Unlike the Maryland Tort Claims Act, however, there is no language in § 19–103 which expressly makes the grant of immunity to an employee co-extensive with the waiver of governmental immunity. On the other hand, the plaintiffs' argument concerning the scope of § 19–103's waiver of governmental immunity, based on the statutory language and legislative history, is highly persuasive.

Nevertheless, we need not decide in this case whether § 19–103 waives State governmental immunity. Under the circumstances here, the plaintiffs right to proceed against the State under § 19–103, if it is applicable, would be no greater that its right under the Maryland Tort Claims Act.

tenable. The intermediate appellate court held that all of Trooper Titus's actions were protected by the doctrine of public official immunity, and that under *Bradshaw v. Prince George's County, supra,* the governmental employer is not liable when "the alleged tortious conduct on which the suit against [it] is based results ˙from actions of an individual who is personally immune." *Boyer v. State, supra,* 80 Md.App. at 106, 560 A.2d at 50.[17] The holding of the *Bradshaw* case relied on by the Court of Special Appeals, however, was overruled in *James v. Prince George's County, supra,* 288 Md. at 329–336, 418 A.2d at 1181–1184. *See Clea v. City of Baltimore, supra,* 312 Md. at 667 n. 2, 541 A.2d at 1305 n. 2. In *James,* we held "that the government, when it has waived immunity ..., is liable for torts committed by its officers even though those officers themselves are not liable because of public official immuni-

---

**17.** With respect to the Court of Special Appeals' application of public official immunity to Trooper Titus's actions, we have in Part III A of this opinion agreed with the intermediate appellate court that Trooper Titus's decision not to apprehend Mr. Farrar at the red light was protected by public official immunity. We do not reach the issue of whether Trooper Titus's decisions to embark upon and continue the high speed chase might be within the doctrine of public official immunity, as we have held that Trooper Titus is protected from liability under § 19–103 of the Transportation Article and the Maryland Tort Claims Act for such conduct. We point out, however, that several cases in other jurisdictions have held that a police officer's commencement and continuation of a high speed chase is "ministerial" and not protected by public official immunity. *See, e.g., Biscoe v. Arlington County,* 738 F.2d 1352, 1363 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); *Pletan v. Gaines,* 460 N.W.2d 74, 76–77 (Minn.App.1990); *Lowrimore v. Dimmitt,* 310 Or. 291, 797 P.2d 1027, 1030–1031 (1990); *Mason v. Bitton,* 85 Wash.2d 321, 328–329, 534 P.2d 1360, 1365 (1975). Other cases appear to hold that the decision to pursue is a discretionary one but that the decision to continue the pursuit is ministerial. *See, e.g., Gibson v. City of Pasadena,* 83 Cal.App.3d 651, 659–661, 148 Cal.Rptr. 68, 73 (1978); *Brown v. Pinellas Park,* 557 So.2d 161, 168 (Fla.App.1990). Finally, two cases seem to agree with the Court of Special Appeals that both the decision to pursue and the decision to continue pursuit are discretionary and subject to immunity. *Bratt v. San Francisco,* 50 Cal.App.3d 550, 553, 123 Cal.Rptr. 774, 776 (1975); *Frohman v. Detroit,* 181 Mich.App. 400, 409–410, 450 N.W.2d 59, 63 (1989), *appeal denied,* 437 Mich. 873 (1990).

ty." 288 Md. at 333, 418 A.2d at 1183. *See also Surratt v. Prince George's County,* 320 Md. 439, 443, 578 A.2d 745, 747 (1990); *Prince George's County v. Fitzhugh,* 308 Md. 384, 388, 519 A.2d 1285, 1287 (1987).

### B.

As we have noted, *supra,* footnote 11, the alleged negligence of Trooper Titus in deciding not to apprehend Mr. Farrar at the red light was not conduct for which the Government had waived immunity under the pre–1985 language of the Maryland Tort Claims Act. The plaintiffs, relying on *Foor v. Juvenile Services,* 78 Md.App. 151, 552 A.2d 947, *cert. denied,* 316 Md. 364, 558 A.2d 1206 (1989), argue that the 1985 amendments to the Tort Claims Act, which broadened the State's waiver of immunity, apply retroatively to the present case. The State, as might be expected, resists this argument and contends that the *Foor* case was incorrectly decided. It is unnecessary for us to resolve this question in the present case. Even if it be assumed, arguendo, that the State's immunity had been waived for Trooper Titus's alleged negligence at the red light, we have held in Part III A that Trooper Titus owed no duty to the Boyers in connection with his decision not to apprehend Mr. Farrar at the red light. If Trooper Titus owed no duty to the Boyers in this regard, he is guilty of no tort for which the State can be liable under the Tort Claims Act.

### C.

We have held that Trooper Titus's alleged negligent engagement in the high speed chase was conduct encompassed by the pre–1985 amendments to the Tort Claims Act. The same is true with respect to the pursuit by the deputy sheriffs. Thus, the last issue for us to decide in this case is whether Trooper Titus and the deputy sheriffs may have owed a duty to the Boyers in connection with their decisions to commence and continue the high speed chase. If so, the

judgment in favor of the State will have to be vacated in part.

In contending that the police officers' engagement in the high speed chase implicated no duty owed to the Boyers, the State's sole reliance has been *Ashburn v. Anne Arundel County, supra,* 306 Md. 617, 510 A.2d 1078. As previously discussed, however, *Ashburn* involved a police officer's decision not to apprehend a suspected drunk driver and the argument that § 16–205.1(b)(2) of the Transportation Article imposed a mandatory duty upon the officer to apprehend the driver. It was in this context that the Court held that the officer owed no duty, enforceable by tort liability against the officer, to a third party who was thereafter injured by the drunk driver. *Ashburn* did not involve an officer's allegedly negligent operation of his police car by engaging in a high speed chase under circumstances where a reasonably prudent police officer would not do so.

While police officers and other operators of emergency vehicles are exempt from certain rules of the road while in performance of emergency service, it is clear under Maryland statutory and common law that a police officer, in connection with his operation of a police car, owes others on the roadway a duty of due care. Code (1977, 1987 Repl. Vol), § 21–106(d) of the Transportation Article (grant of certain privileges to operator of emergency vehicle "does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons"); *Martin v. Rossignol,* 226 Md. 363, 368–370, 174 A.2d 149, 151–153 (1961). In *Martin v. Rossignol, supra,* a police officer, while engaged in a high speed chase of a suspected criminal, collided with the pursued vehicle and sued the suspected criminal in a negligence action. The Court, in considering whether or not the police officer was contributorially negligent, indicated that, although the statute imposing a duty of due care on the part of a police officer operating an emergency vehicle may not extend to the fleeing criminal, it pertained to "nonparticipants in the chase." 226 Md. at 370, 174 A.2d at 153. *See Sudbrook v.*

*State*, 153 Md. 194, 200, 138 A. 12, 14 (1927) (where a police officer's survivors sued an innocent motorist with whom he collided while pursuing a speeding vehicle, and the Court found the police officer to have been contributorially negligent as a matter of law, stating: "The fact that he was an officer in pursuit of a driver of an automobile, who was exceeding the speed limit, made his swift pace none the less dangerous, nor did it relieve him of the legal duty to observe due care for the protection of those whom he knew, or by the exercise of reasonable judgment should have expected, to be using the highways at the place of the accident"). *See also Altenburg v. Sears*, 249 Md. 298, 303–304, 239 A.2d 569, 572–573 (1968); *Baltimore City v. Salvage Corps.*, 219 Md. 75, 80–82, 148 A.2d 444, 447 (1959); *Baltimore Transit Co. v. Young*, 189 Md. 428, 432, 56 A.2d 140, 141–142 (1947).

Moreover, under Maryland law police officers owe a duty of care to a plaintiff injured by suspected criminals fleeing the officers if the officers "set in motion a chain of events which they knew or should have known would lead to ... [the plaintiff's] injury by the criminals or by the police effort to stop the vehicle." *Keesling v. State*, 288 Md. 579, 591, 420 A.2d 261 (1980). In *Keesling*, the plaintiff, an innocent motorist, sued the State for damages sustained when the State police allegedly assisted criminals in commandeering the plaintiff's automobile. According to the plaintiff, two police officers who were being forced at gunpoint to transport two fugitives in their police car suggested that their captors escape in the plaintiff's unmarked car. The officers then pulled the plaintiff's car over to the side of the highway using the car's siren and beacon light. The fugitives got into the plaintiff's car and ordered him to drive. They were eventually apprehended in a rolling roadblock but only after they threatened to shoot the plaintiff. In reversing summary judgment for the State, this Court stated that

"the common law imposed a duty on the police in carrying out their responsibilities to take precautions for the safe-

ty of the public.... If a police officer in performing his responsibilities places a private citizen in a zone of danger without reasonable justification, he may be liable for injuries proximately caused by his negligence." (288 Md. at 589, 420 A.2d at 266).

Therefore, it seems clear under Maryland law that Trooper Titus owed the Boyers a duty of due care if he placed them within "a zone of danger without reasonable justification" and if he "set in motion a chain of events which [he] knew or should have known would lead to [the Boyers'] injur[ies]." 288 Md. at 589, 591, 420 A.2d at 266, 267.

The parties have not called to our attention, and we are unaware of, any prior Maryland case involving circumstances like those alleged in the present case and involving the question of the police officer's duty to innocent third parties such as the Boyers. Nevertheless, the matter has been extensively litigated elsewhere. The majority of cases, and particularly the more recent cases, take the position that a police officer or his governmental employer may be held liable for the officer's negligence in engaging in a high speed motor vehicle chase where the individual being pursued causes injury to the plaintiff. *See, e.g., Biscoe v. Arlington County,* 738 F.2d 1352 (D.C.Cir.1984, *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); *Estate of Aten v. Tucson,* —— Ariz.App. —— (1991); *City of Sacramento v. Superior Court,* 131 Cal.App.3d 395, 404–405, 182 Cal.Rptr. 443, 449 (1982); *Tetro v. Stratford,* 189 Conn. 601, 458 A.2d 5 (1983); *Brown v. Pinellas Park,* 557 So.2d 161, 176–177 (Fla.App.1990); *Fiser v. City of Ann Arbor, supra,* 417 Mich. at 470, 339 N.W.2d at 416; *Lowrimore v. Dimmitt,* 310 Or. 291, 797 P.2d 1027 (1990); *Kuzmics v. Santiago,* 256 Pa.Super. 35, 40–41, 389 A.2d 587, 590 (1978); *Travis v. City of Mesquite,* —— Tex. —— (1990); *Mason v. Bitton, supra,* 85 Wash.2d 321, 534 P.2d 1360. *See also Pletan v. Gaines,* 460 N.W.2d 74 (Minn. App.1990); *Smith v. City of West Point,* 475 So.2d 816 (Miss.1985); *Schatz v. Cutler,* 395 F.Supp. 271 (D.Vt.1975); S. Carlin, *High–Speed Pursuits: Police Officer and Munic-*

*ipal Liability for Accidents Involving the Pursued and an Innocent Third Party*, 16 Seton Hall L.Rev. 101, 109 n. 82 (1986) (collecting cases).

A few courts, while holding that a police officer owes some degree of duty to those injured by a suspected criminal who is being pursued by the officer at high speeds, take the position, because of statutory criteria in the jurisdictions involved, that there is no breach of the duty unless the officer is grossly negligent or engages in wanton or extreme conduct. *See Breck v. Cortez, supra*, 141 Ill.App.3d at 359–361, 95 Ill.Dec. at 620–22, 490 N.E.2d at 93–95; *Selkowitz v. County of Nassau*, 45 N.Y.2d 97, 102, 408 N.Y.S.2d 10, 12, 379 N.E.2d 1140, 1143 (1978); *Bullins v. Schmidt, supra*, 322 N.C. at 583, 369 S.E.2d at 603. Some cases seem to express this view absent statutory criteria. *See Kelly v. City of Tulsa*, 791 P.2d 826, 829 (Okla.App. 1990); *DeWald v. State*, 719 P.2d 643, 650–652 (Wyo.1986); *State of West Virginia v. Fidelity & Cas. Co. of N.Y.*, 263 F.Supp. 88, 91 (S.D.W.Va.1967) (indicating that the police officer would be liable where he acted in reckless "disregard for the life and property of third parties, such as an officer's continued high speed chase through a crowded school zone," but that ordinarily the officer is not liable).[18]

---

**18.** There are cases which hold that a police officer is not liable to a plaintiff who is injured by a suspect fleeing from the police officer in a high-speed chase. Many of these cases express the view that any negligence of the police officer is not the proximate cause of the plaintiff's injury, but that the fleeing suspect's conduct is the sole proximate cause. *See, e.g., United States v. Hutchins*, 268 F.2d 69, 72, (6th Cir.1959); *Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589, 591 (Ky.App.1952); *Roll v. Timberman*, 94 N.J.Super. 530, 536–538, 229 A.2d 281, 284–285, *cert. denied*, 50 N.J. 84, 232 A.2d 147 (1967). *But, cf., Smith v. Nieves*, 197 N.J.Super. 609, 485 A.2d 1066 (1984). *See also Kelly v. City of Tulsa*, 791 P.2d 826, 829 (Okl.App.1990); *Kennedy v. City of Spring City*, 780 S.W.2d 164, 166 (Tenn.1989); *DeWald v. State*, 719 P.2d 643, 652 (Wyo.1986); S. Carlin, *High–Speed Pursuits: Police Officer and Municipal Liability for Accidents Involving the Pursued and an Innocent Third Party*, 16 Seton Hall L.Rev. 101, 109–110 n. 82 (1986) (collecting cases).

Consequently, we hold that Trooper Titus and the deputy sheriffs, in engaging in the high speed pursuit of Mr. Farrar, owed a duty of care to the Boyers.

## D.

Although a police officer may owe a duty of care to persons in the position of the Boyers, it does not follow that the mere engagement in the high speed chase of a criminal suspect constitutes a prima facie breach of that duty whenever the fleeing suspect strikes a third party. As previously discussed, however, neither motion for summary judgment questioned the adequacy of the plaintiffs' allegations to show a breach of duty. Both summary judgment motions, and the circuit court's ruling, seemed to assume that the plaintiffs' allegations of negligence by the police officers were sufficient. In light of this, as well as the principle that an appellate court will ordinarily review a grant of summary judgment only on the grounds relied upon by the trial court,[19] we shall not review the sufficiency of the plaintiffs' allegations to set forth a prima facie case of negligence on the part of Trooper Titus and the deputy sheriffs. This matter will be before the trial court on remand. Moreover, upon remand the plaintiffs may seek to

---

The cases asserting lack of proximate cause, however, overlook the fact that there can be more than one cause of an injury. It is entirely foreseeable under certain circumstances that a police officer's engagement in a high-speed chase could be a proximate cause of an injury to a third party struck by the pursued suspect. As some text writers have pointed out, an analysis involving proximate cause or intervening or superseding causes may not be appropriate in the type of case we have before us. 4 F. Harper, F. James, O. Gray, *The Law of Torts* § 20.5 (2d ed. 1986); W. Prosser and W.P. Keeton *Law of Torts* § 44, at 303–306 (5th ed. 1984); 1 J.D. Lee and B. Lindahl, *Modern Tort Law* § 3.10 (Rev. ed. 1990).

**19.** *Orkin v. Holy Cross Hospital,* 318 Md. 429, 435, 569 A.2d 207, 210 (1990); *Three Garden v. USF & G,* 318 Md. 98, 107–108, 567 A.2d 85, 89 (1989); *Geisz v. Greater Baltimore Medical,* 313 Md. 301, 314 n. 5, 545 A.2d 658, 664 n. 5 (1988), and cases there cited.

amend their complaint.[20]

Nevertheless, for guidance of the trial court, we shall make some comments pertinent to the breach of duty issue. It must be remembered that the police officer's conduct should be judged not by hindsight but should be viewed in light of how a reasonably prudent police officer would respond faced with the same difficult emergency situation. The officer is not to be held to the same coolness and accuracy of judgment of one not involved in an emergency vehicle pursuit. *See Fiser v. City of Ann Arbor, supra,* 417 Mich. at 470, 339 N.W.2d at 416. *See Martin v. Rossignol, supra,* 226 Md. at 369–370, 174 A.2d at 152–153. Any officer, confronted with the situation where an individual who poses a threat to others refuses to stop, and instead attempts to flee at a high rate of speed, must make a split-second decision as how to respond. Risks are attendant upon the officer's decision to pursue and on his decision not to pursue. A high-speed chase may aggravate an already dangerous situation by causing a driver who appears to be operating his vehicle dangerously to do so at higher speeds. On the other hand, if the officer does not pursue an individual believed to be dangerous on the road, such as an intoxicated driver, that individual may nonetheless continue on a dangerous course of conduct and

---

20. Since this Court has not previously dealt with the situation of a high speed police chase involving a collision between the vehicle being pursued and a vehicle carrying innocent third parties such as the Boyers, we should add a caveat regarding the pleading requirements in this type of case. An emergency vehicle may under certain circumstances exceed the speed limit and disregard traffic control devices. Merely alleging violations of the Transportation Code or mere conclusory allegations of negligence will not be sufficient; greater specificity is required. In the instant case, the sufficiency of the complaint in this regard was not challenged, but we should point out that it may not adequately allege negligence by the officers. For example, as previously pointed out, the allegation that the officers did not "activate immediately" all emergency equipment is vague. Without more specificity, it adds very little to the complaint. Some of the other allegations by the plaintiffs are also vague. The complaint should state with specificity the negligent acts which the plaintiffs contend proximately caused the accident.

seriously injure someone. *See DeWald v. State, supra,* 719 P.2d at 652.

In the case before us, according to the plaintiffs, Mr. Farrar was already driving erratically before Trooper Titus began his pursuit. An officer in Trooper Titus's position must take into account a number of factors, such as road conditions, vehicular traffic, pedestrian traffic, time of day, weather, dangerousness of the person fleeing, and make what is virtually an instantaneous judgment. A police officer deciding to maintain pursuit may not be negligent even if the course of action he chooses leads to serious injury to an innocent third person. *Lee v. City of Omaha,* 209 Neb. 345, 351, 307 N.W.2d 800, 804 (1981) (in affirming the trial court's finding that officers engaged in a high-speed pursuit resulting in injuries to innocent third parties were not negligent, the Supreme Court of Nebraska stated that "[i]t must be remembered that foresight, not hindsight, is the standard by which negligence is determined, and that even an action which in retrospect turns out to have been ill-advised may still have been reasonable under all the circumstances"); *Simmen v. State,* 81 A.D.2d 398, 400, 442 N.Y.S.2d 216, 218 (1981), *affirmed,* 55 N.Y.2d 924, 449 N.Y.S.2d 173, 434 N.E.2d 242 (1982) ("the actions of the police officer are to be considered as of the time and under the circumstances in which they occurred, not by subsequent facts or in retrospect"); *DeWald v. State, supra,* 719 P.2d at 652 ("we will not unfairly use hindsight in assessing official actions challenged in litigation"). *See West v. United States,* 617 F.Supp. 1015, 1017–1018 (C.D.Cal.1985), *affirmed,* 807 F.2d 178 (9th Cir.1986), (in light of the circumstances under which the officers were operating, they were not negligent in conducting a high-speed pursuit of suspected law violators); *Bailey v. L.W. Edison Charitable Foundation,* 152 Ind.App. 460, 466–467, 284 N.E.2d 141, 145 (1972) ("Thus, the protection of life and property by capturing a fleeing offender who, by not stopping his vehicle, wantonly and wilfully endangers public safety must be

weighed against the possibility of endangering life and property by commencing or continuing the pursuit").

Very often when a breach of the police officer's duty is found in high speed chase cases like the present, there are particular aggravating circumstances, such as a violation of police department policies or guidelines,[21] failure to turn on warning devices,[22] extremely high speeds in congested areas,[23] or other factors. There are, however, no hard rules in this area, and each case depends upon its own facts.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY IN FAVOR OF THE "CHARLES COUNTY SHERIFF'S DEPARTMENT," TO REMAND THE ACTION AGAINST THE COUNTY COMMISSIONERS OF CHARLES COUNTY IN ACCORDANCE WITH MARYLAND RULE 8–604(d) AND THIS OPINION, TO AFFIRM THE JUDGMENT IN FAVOR OF ROBERT C. TITUS, TO AFFIRM IN PART AND VACATE IN PART THE JUDGMENT IN FAVOR OF THE STATE OF MARYLAND, AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. ONE–HALF OF THE COSTS IN THIS COURT AND IN THE

---

**21.** *See, e.g., Biscoe v. Arlington County, supra,* 738 F.2d at 1354–1355; *Brown v. Pinellas Park, supra,* 557 So.2d 161; *Mason v. Bitton, supra,* 85 Wash.2d at 323–325, 534 P.2d at 1362–1363. For a discussion of police department written guidelines and policies concerning high speed chases, and their role in tort litigation, *see* R. Zevitz, *Police Civil Liability And The Law Of High Speed Pursuit,* 70 Marq.L.Rev. 237 (1987).

**22.** *See, e.g., City of Sacramento v. Superior Court,* 131 Cal.App.3d 395, 405–406, 182 Cal.Rptr. 443, 449–450 (1982); *Sundin v. Hughes,* 107 Ill.App.2d 195, 201–202, 246 N.E.2d 100, 104 (1969).

**23.** *See, e.g., Fisher v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (1983); *Kuzmics v. Santiago,* 256 Pa.Super. 35, 389 A.2d 587 (1978).

COURT OF SPECIAL APPEALS TO BE PAID BY THE PLAINTIFFS AND ONE–HALF OF THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE STATE OF MARYLAND.