ESTATE OF Donald E. CAVANAUGH, by James H.
Cavanaugh, Special Administrator and James H.
Cavanaugh, Plaintiffs-Respondents-Petitioners,†

v.

Robert ANDRADE and City of Milwaukee, Defendants-
Appellants-Cross Petitioners,

Gary Allen ZERGOSKI, Defendant.

Supreme Court

*No. 94–0192. Oral argument January 30, 1996.—Decided
June 27, 1996.*

(Also reported in 550 N.W.2d 103.)

†Motion for reconsideration denied September 12, 1996.

For the plaintiffs-respondents-petitioners there were briefs by *Christopher J. Stawski* and *McGranaghan & Stawski, Ltd.*, Milwaukee and oral argument by *Christopher J. Stawski.*

For the defendants-appellants-cross petitioners there were briefs by *Jan A. Smokowicz*, assistant city attorney and *Grant F. Langley*, city attorney, Milwaukee and oral argument by *Jan A. Smokowicz.*

ANN WALSH BRADLEY, J. The plaintiffs, Estate of Donald Cavanaugh and James Cavanaugh, seek review, and the defendants, City of Milwaukee and police officer Robert Andrade, seek cross-review of a decision of the court of appeals that reversed a judgment against the City and affirmed a judgment against Andrade, which was entered by the Circuit Court for Milwaukee County, Laurence C. Gram, Jr., Judge.[1] The City and Andrade assert immunity from liability for the injuries and death of Donald Cavanaugh which resulted from a collision with a vehicle being pursued by Andrade during a high-speed chase. Because the City has a ministerial duty to have a written policy for high-speed chases which includes consideration of the severity of the offense, we conclude that the City is not immune from liability. We also conclude that there is credible evidence to support the jury's verdict finding that the City breached its duty. Further, because Andrade's decisions to initiate and continue the chase were discretionary, we conclude that he is immune from liability. Accordingly, we reverse the decision of the court of appeals.

---

[1] *Estate of Cavanaugh v. Andrade*, 191 Wis. 2d 244, 528 N.W.2d 492 (Ct. App. 1995).

## I. FACTS

The issues in this case arise out of a high-speed pursuit involving Andrade and a vehicle driven by Gary Zergoski. Late in the evening on January 13, 1989, Andrade was approaching the intersection of South 35th Street and West Forest Home Avenue when he observed Zergoski pass several stopped vehicles and speed through a solid red traffic signal controlling the intersection. Andrade turned at the intersection and increased his speed to follow Zergoski.

Andrade activated his emergency lights and siren approximately two blocks later, which caused Zergoski to begin to pull over. However, Zergoski again fled at a high rate of speed and turned onto 39th Street. Approximately six to seven blocks later, Andrade observed Zergoski's vehicle stalled in an intersection. Andrade was able to approach close enough to observe Zergoski's license plate number, which he relayed to the dispatcher. Zergoski restarted his vehicle and again fled at a high rate of speed along West Morgan Avenue, which is a main arterial street within a primarily residential neighborhood.

At the intersection of 60th Street and Morgan, Zergoski went through another red light and collided with a vehicle driven by Donald Cavanaugh. According to witnesses, Zergoski was travelling between 60 and 80 miles per hour approximately two blocks prior to this intersection. Andrade estimated that he was approximately one block away from this collision when it occurred. A witness testified that Andrade was within approximately one-half block of Zergoski's vehicle when it entered the intersection. In all, the pursuit spanned approximately 17 blocks. As a result of the collision, Cavanaugh died after spending five months in a coma.

James Cavanaugh, Donald's father, sued the City, Andrade, and Zergoski, individually and as administrator of Donald's estate. The case was ultimately tried to a jury, which found the City 23% negligent with respect to implementation of its high-speed pursuit policy, Andrade 2% negligent with respect to the operation of his vehicle, and Zergoski 75% negligent.

During the trial, Cavanaugh and the City stipulated orally on the record that the damages consisted of $50,000 for James' loss of society and companionship claim and $50,000 for damages for Donald's pain and suffering, apparently under the belief that the maximum allowable recovery on each claim was $50,000. *See* Wis. Stat. § 893.80(3) (1993-94).[2] In motions after verdict, however, Cavanaugh moved for judgment against the City and Andrade in the amount of $250,000, which is the maximum recovery allowed for damages resulting from the negligent operation of a motor vehicle owned and operated by a municipality. *See* Wis. Stat. § 345.05(3).

The City and Andrade moved for judgment notwithstanding the verdict on the grounds that they were immune from liability. The City also contested Cavanaugh's post-verdict claim for damages in the amount of $250,000, arguing that the oral stipulation entered into at trial was binding.

The circuit court denied the City's and Andrade's motion as to immunity. The court also determined that the oral stipulation of damages was not binding because there had been no meeting of the minds. The parties subsequently agreed to a second stipulation, and judgment was entered in the amount of $250,000, plus costs. Pursuant to the second stipulation, the City

---

[2] All future statutory references are to the 1993-94 volume unless otherwise stated.

and Andrade reserved for purposes of appeal the legal issue of whether the initial stipulation of damages was binding.

A majority of the court of appeals reversed the judgment against the City, holding that the City was immune from liability. *Estate of Cavanaugh v. Andrade*, 191 Wis. 2d 244, 257, 528 N.W.2d 492 (Ct. App. 1995). However, the court affirmed the judgment of liability with respect to Andrade, holding that an officer is not afforded immunity where he or she is negligent in the operation of a motor vehicle. *Id.* at 261. It also concluded that the initial oral stipulation limiting damages to $100,000 was binding on the parties. *Id.* at 262.

Cavanaugh seeks review of the court of appeals' holding that the City is immune from liability. He also contends that the court erred in holding that the oral stipulation of damages is binding on the parties. The City and Andrade seek cross-review of that portion of the decision of the court of appeals affirming the judgment against Andrade.

## II. IMMUNITY GENERALLY

The central question presented by this case is whether a municipality and its police officers may be liable for injuries arising out of a high-speed pursuit, where the pursued vehicle collides with a third person. The City and Andrade maintain that the general municipal tort immunity set forth in Wis. Stat. § 893.80(4)[3] relieves them from liability for any dam-

[3] Wisconsin Stat. § 893.80(4) provides:

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional

ages resulting from the collision between Zergoski and Cavanaugh. This court most recently summarized the doctrine of governmental immunity in *Kimps v. Hill*, 200 Wis. 2d 1, 546 N.W.2d 151 (1996). As we stated in that case, "[t]he test for determining whether a duty is discretionary (and therefore within the scope of immunity) or ministerial (and not so protected) is that the latter is found only when [the duty] is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.* at 10-11 (citations omitted).

Despite the immunity for discretionary acts of municipalities and its employees set forth in § 893.80(4), Cavanaugh argues that neither the City nor Andrade are immune from liability arising out of a high-speed pursuit based on Wis. Stat. § 346.03. Section 346.03 specifically governs the privileges and duties of drivers of emergency vehicles, Wis. Stat. § 346.03(1)-(5).[4]

---

torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

[4] Wisconsin Stat. § 346.03 provides in relevant part:

**Applicability of rules of the road to authorized emergency vehicles. (1)** The operator of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law . . . may exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5).

(2) The operator of an authorized emergency vehicle may:

(a) Stop, stand or park, irrespective of the provisions of this chapter;

This court has not yet had occasion to consider the applicability of the defense of immunity in the context of a high-speed pursuit. We consider this question as applied to the City and Andrade separately under the facts and circumstances of this case.

## III. CITY OF MILWAUKEE

### A. Immunity

■

Cavanaugh alleged that the City was negligent because it implemented a high-speed pursuit policy that did not comply with Wis. Stat. § 346.03(6). However, if the duty imposed by § 346.03(6) is discretionary, as opposed to ministerial, the City is afforded immunity for its actions pursuant to § 893.80(4). Whether § 346.03(6) creates a discretionary or ministerial duty is a question of law that this court reviews de novo. *See Kimps*, 200 Wis. 2d at 11-15. *See also Larsen v. Wisconsin Power & Light Co.*, 120 Wis. 2d 508, 516, 355 N.W.2d 557 (Ct. App. 1984).

Section 346.03(6) imposes a duty on law enforcement agencies that use emergency vehicles to establish written guidelines for high-speed pursuits:

----

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the speed limit;

'(d) Disregard regulations regarding direction of movement or turning in specified directions.

. . . .

(5) The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

> Every law enforcement agency which uses author-ized emergency vehicles shall provide written guidelines for its officers and employees regarding exceeding speed limits . . . and when otherwise in pursuit of actual or suspected violators. The guide-lines shall consider, among other factors, road conditions, density of population, severity of crime and necessity of pursuit by vehicle.

The court of appeals concluded that this statute creates a ministerial duty because law enforcement agencies are required to provide written guidelines which must consider certain factors. *Cavanaugh*, 191 Wis. 2d at 253-54.

██

We agree with the court of appeals that while the promulgation of guidelines in general involves a great amount of governmental discretion, § 346.03(6) makes the inclusion of certain parts of the policy promulgation ministerial. *Cavanaugh*, 191 Wis. 2d at 254. The stat-ute mandates that law enforcement agencies "shall provide written guidelines for its officers" which "shall consider" specific factors. These actions are "absolute, certain and imperative, involving merely the perform-ance of a specific task." *Kimps*, 200 Wis. 2d at 10. Accordingly, the City is not immune from liability for damages caused by a breach of the ministerial duty set forth in § 346.03(6).

## B. Negligence

Having concluded that § 346.03(6) imposes a min-isterial duty on the City, we next consider whether the City was negligent in carrying out its duty. Cavanaugh alleged that the City was negligent because its pursuit policy failed to advise its officers to consider the sever-ity of the crime when deciding to initiate or continue a

chase as mandated by § 346.03(6). The jury found that the City was 23% causally negligent with respect to the implementation of its high-speed pursuit policy. The City argued in its motion for judgment notwithstanding the verdict that it was immune from liability. The circuit court denied the motion, concluding that the application of governmental immunity for negligence in high-speed pursuits required public policy considerations more properly made by an appellate court.

When the circuit court does not make an analysis of the evidence sustaining the verdict, as here, an appellate court must review the record as a matter of first impression to see if there is any credible evidence to support the verdict. *Kolpin v. Pioneer Power & Light*, 162 Wis. 2d 1, 25, 469 N.W.2d 595 (1991). In order to establish the City's liability for damages, Cavanaugh must show: (1) that the City breached its ministerial duty; and (2) a causal connection between the City's conduct and his son's injury and subsequent death. *See Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995).

The evidence shows that the City's policy states in relevant part:

> 2. Department Vehicle Operators
>
>> a.) A Department vehicle operator shall only engage in a motor vehicle pursuit when:
>>
>>> (1) He/she has activated the emergency roof lights and siren if in a marked vehicle or has activated the emergency light and siren . . . .

(2) He notifies the Communications Division dispatcher of the pertinent facts concerning the pursuit and requests assistance . . . .

(3) The speeds involved and/or the maneuvering practices engaged in permit the Department vehicle operator complete control of his vehicle and do not create unwarranted danger to the public or Department members.

(4) The volume of pedestrian and/or vehicular traffic permits continuing the pursuit.

(5) Weather and road conditions are not such that the pursuit becomes inordinately hazardous.

b.) Police officers engaged in the motor vehicle pursuit of a driver who is an IMMEDIATE threat to the safety of the public may take reasonable and prudent measures to apprehend the driver without endangering the welfare of others. However, the deliberate striking of a pursued vehicle or the use of a Department or other vehicle(s) as a stationary barricade is only permitted to be used as a last resort when:

(1) The occupant(s) of the vehicle being pursued is wanted for a serious felony, or

(2) The manner in which the pursued vehicle is being operated creates a substantial risk of serious injury or death.

> c.) The Department vehicle operator or supervisor shall terminate a motor vehicle pursuit when in his/her judgment further pursuit is not warranted. Some examples of items to be considered are the volume of pedestrian and/or vehicular traffic, road and weather hazards or the distance between vehicles indicates that further pursuit will create more danger to the public and/or Department members than does the conduct of the pursued driver.

City of Milwaukee, Order # 9491, January 30, 1987.

The City asserts that it did not breach its ministerial duty because its policy complies with § 346.03(6). According to the City, the statute gives it discretion to decide which part of its guidelines include consideration of the severity of the crime. The City argues that it properly exercised that discretion by concluding that the severity of the crime factor should only be considered in determining whether to strike a fleeing vehicle or set up a roadblock.

A majority of the court of appeals agreed with the City, concluding that "[t]he City, in its discretion, chose only to consider severity of the crime with respect to the use of road blocks" and that the City therefore satisfied the requirement under § 346.03(6). *Cavanaugh*, 191 Wis. 2d at 257 n.1. However, the court of appeals' dissent concluded that the City's pursuit policy failed to comply with § 346.03(6) because it did not refer to the severity of the crime in the context of the actual pursuit. *Cavanaugh*, 191 Wis. 2d at 268-69 (Schudson, J., concurring in part, dissenting in part).

We agree with Cavanaugh that the evidence shows that the City's policy fails to consider the severity of the crime with respect to pursuing at excessive speeds as

required under § 346.03(6). The City's policy states that a department vehicle operator *shall only engage in a motor vehicle pursuit when*: (1) the officer has activated the vehicle's emergency lights, (2) the officer notifies the dispatcher of the pertinent facts and requests assistance, (3) the speeds do not create an unwarranted danger to the public or department members, (4) the volume of pedestrian or vehicular traffic permits continuing the pursuit, and (5) weather and road conditions do not make the pursuit inordinately hazardous. None of the factors include any reference to the severity of crime.

Therefore, we disagree with the City and the opinion of the majority of the court of appeals that the reference to the severity of crime elsewhere in the City's policy is adequate to comply with the mandate of § 346.03(6). The evidence shows that the City's policy considers the severity of the crime only in roadblocks and in striking a fleeing vehicle, when a serious felony is involved. However, there is no consideration of the severity of the crime when a person is being pursued for a misdemeanor or a traffic offense, as here.

■

As the court of appeals' dissent properly recognized, striking and barricading occur in only a limited number of police pursuits. *Cavanaugh*, 191 Wis. 2d at 268. The City's policy of considering the severity of the crime only with respect to these limited aspects of police pursuits directly contravenes the language of § 346.03(6). Therefore, we conclude that there is credible evidence to support the jury's verdict that the City was negligent with respect to the implementation of its pursuit policy.

## C. Causation

Although we conclude that the record is sufficient to sustain the jury's finding of negligence, our review does not end there. The court of appeals erroneously concluded that if the City breached its ministerial duty by failing to comply with § 346.03(6), then liability attaches. *Cavanaugh*, 191 Wis. 2d at 254. As noted above, Cavanaugh must also prove causation between the City's defective pursuit policy and his damages. *Rockweit*, 197 Wis. 2d at 418.

The test for determining causation is whether the conduct at issue was a substantial factor in producing the injury. *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660 (1979). This question is generally one of fact for the jury, and we must sustain the jury's finding "if there is any credible evidence under any reasonable view or any reasonable inferences derived therefrom that support [it]." *Fondell v. Lucky Stores, Inc.*, 85 Wis. 2d 220, 230, 270 N.W.2d 205 (1978), quoting *Lueck v. City of Janesville*, 57 Wis. 2d 254, 262, 204 N.W.2d 6 (1973).

Cavanaugh's theory regarding causation was that had the City's policy properly stated that the severity of the crime should be considered in determining whether to initiate and continue a pursuit, the pursuit here would have been terminated prior to the accident because the chase arose out of minor traffic violations. However, the fact that the City's policy was defective cannot be considered causal if either Andrade or his supervising officer, who was monitoring the chase, considered the severity of the crime despite the defective policy. Therefore, in order to determine whether the City's defective policy was a substantial factor in producing the injury, we first review the record to

306

determine whether either Andrade or his supervisor considered the severity of the crime.[5]

On adverse examination, Andrade testified that upon initiating the pursuit, the only known crimes that Zergoski had committed were speeding and going through a red light. He also stated that based on these initial traffic violations he suspected that Zergoski was intoxicated. However, other than additional speeding and going through more traffic signals, he did not note any subsequent conduct to substantiate his belief that Zergoski was intoxicated.[6] Andrade further testified that he never considered terminating the pursuit during the entire period because he did not believe, based on the lack of traffic, that Zergoski's actions were endangering others on the road.[7]

---

[5] The dissent erroneously asserts that the majority has "mischaracterized" the causation analysis as "hinging" on whether Andrade or his supervisor considered the severity of the crime. Justice Geske's dissent at 333. As we expressly state at the outset of this discussion, we employ the substantial factor test when analyzing the existence of causation. As we further discuss below, the essential question is whether there is any credible evidence to support the jury's finding that the City's policy was a substantial factor in producing Cavanaugh's injuries. However, we would not even reach that question if the record conclusively establishes that either Andrade or his supervisor considered the severity of the crime despite the City's defective policy.

[6] Although Andrade did not specifically identify any additional conduct which substantiated his belief that Zergoski was intoxicated, he testified that he observed Zergoski's vehicle "fishtail" when speeding around one corner. He also testified that Zergoski weaved slightly during one stretch, which he attributed to over-acceleration.

[7] Although the dissent to this section relies on a long excerpt from Andrade's testimony in which he testified that

Andrade's testimony on direct examination in the City's case differed somewhat. He testified that the main reason that he continued the pursuit was his suspicion that Zergoski was intoxicated and that his reckless driving posed a threat to the public. He further stated that he was convinced that Zergoski was not going to stop, and that he wanted to be close enough so that other drivers at intersections would be warned by his siren and flashing lights.

Andrade's supervising officer, Buechner, was specifically asked which factors he considered in terms of his decision to allow the chase to continue. He testified that he considered pedestrian and vehicle traffic, the residential neighborhood, the road conditions, and the fact Andrade was an experienced officer. When counsel pointed out to Buechner on cross-examination that he

public safety was best served by continuing the pursuit, it neglects to acknowledge the following contrary testimony that Andrade did not believe Zergoski's actions were endangering the public at any point prior to the accident:

> Q. Did you believe that during the pursuit that Zergoski's actions were endangering the welfare of others on the road?
>
> . . . .
>
> A. There was no traffic at that time . . . on the road we were on—couldn't have hurt anybody.
>
> Q. So your answer then is no, that during the pursuit his actions did not endanger others on the road?
>
> A. Right.
>
> Q. At any time during the pursuit?
>
> A. No.
>
> . . . .
>
> Q. And you don't believe, do you, that your continuing to chase him at any point prior to the accident created unwarranted danger to the public, do you?
>
> A. No.

did not state that he considered the severity of the crime, he stated that it "slipped my mind when I answered the question."

In assessing the jury's finding of causation, we consider the evidence in the light most favorable to the verdict. *Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 472, 529 N.W.2d 594 (1995). Further, the credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment. *Bennett v. Larsen Co.*, 118 Wis. 2d 681, 705, 348 N.W.2d 540 (1984).

Viewing the evidence in a light most favorable to the verdict, we conclude that a reasonable view of the evidence is that neither Andrade nor Buechner considered the severity of the crime—minor traffic violations—in determining to continue the pursuit. The record indicates that Andrade never explicitly stated that he considered the severity of the crime in deciding to initiate or continue the pursuit. It is true that he testified that his decision to continue the pursuit was based on a suspicion that Zergoski was intoxicated and a threat to the public. However, he also testified that the only crimes he knew for a fact that Zergoski had committed were the initial traffic violations, and that he never considered terminating the pursuit because Zergoski's actions were not endangering others on the road.

Buechner also never explicitly stated that he considered the severity of the offense in this case. On cross-examination he implied that he did in fact consider the severity of the crime by stating that he simply forgot to mention it. However, the jury in its credibility determination could have relied on his initial answer in

which he did not state that he considered the severity of the crime.

Having concluded that there is credible evidence in the record for the jury to conclude that neither Andrade nor his supervisor considered the severity of the crime, we next turn to the essential question of whether there is credible evidence to support the jury's finding that the City's defective policy was a substantial factor in the accident.[8] First, Zergoski testified at trial that he intended to flee and disobey traffic signals as long as Andrade continued to chase him. However, he also testified that he only wanted to get away from Andrade so that he could get out of the car and escape on foot. Zergoski testified that if Andrade had stopped chasing him, he would have no longer been speeding or running red lights.[9]

---

[8] The dissent to this section agrees that this court applies the "any credible evidence" standard when reviewing a jury's finding of causation. However, the dissent then ignores this standard by creating a more onerous standard on review. It asserts that the plaintiff had the burden to prove that: (1) if the written policy required officers to consider the severity of the crime, (2) then, Officer Andrade would have terminated the chase, and (3) Zergoski would have slowed down or stopped his vehicle and averted the collision. Justice Geske's dissent at 333-34. The dissent then proceeds to show, selecting only favorable evidence, that Cavanaugh failed to meet his burden of proof as to these causal links, asserting that any finding of causation in this case can only be based on impermissible speculation and unproved assumption. However, the question on this review is not whether this court is of the opinion that the plaintiff met his burden of proof. Rather, the question is whether there is any credible evidence for the jury to believe that the defective policy was a substantial factor in producing Cavanaugh's injuries.

[9] Zergoski testified in part as follows:

In addition to the testimony of Andrade, Buechner, and Zergoski, Cavanaugh's expert witness, Leonard Territo, explicitly testified as to causation. Territo characterized Andrade's failure to consider whether to terminate the pursuit after he realized that Zergoski was not going to stop as "astounding" in light of the dangerousness of the pursuit. He also testified that he believed that Andrade's failure to terminate the pursuit was a substantial factor in causing the accident based on the following rationale:

> As long as the police officer continues pursuing, the violator will continue to flee from the officer. The theory of course is this, the whole reason for termination is that when you terminate a pursuit, eventually and invariably the individual will slow the speed down. The sooner you do it, the sooner you remove the impetus for the individual to continue to flee; and that's the whole basis for terminating pur-

---

Q. [City Attorney] You were going to go through as many red lights and as many stop lights as there were between 35th and Forest Home and your house in Waukesha to get home that night, weren't you, to keep away from the police officers?

A. No, I just wanted to get away.

. . . .

Q. [Cavanaugh's counsel] And if that officer had stopped chasing you, it was your plan, was it not, to park your car, get out of it and run, wasn't it?

A. Yes.

Q. So if the officer had stopped chasing you, you would have no longer been running red lights, would you have?

A. No.

Q. You would have no longer been speeding, would you have?

A. No.

Q. Because you would have been out of your car; correct?

A. Yeah.

311

suit, to remove the incentive for the violator to continue going through stop signs, red lights, and driving almost three times over the speed limit.

When asked to consider the significance of Zergoski's testimony that he intended to leave the car upon eluding Andrade, Territo explained that:

> [I]f in fact the violator intends to terminate, to bail out of the car three blocks away, what it means is that if the pursuit is terminated where I say, that the vehicle never reaches the point where the accident occurred. He abandons his car, gets out and runs and the accident doesn't occur.

Territo also testified as to the role of the supervising officer. According to Territo, a policy instructing a supervising officer to consider the severity of the offense would have resulted in the chase being stopped in this case. Territo explained the role of the supervising officer in a chase as follows:

> [O]nce the supervisor knows what the violation is, the supervisor can assess how much latitude the patrol officer should be given. What happens, the patrol officer gets caught in the pursuit . . . . The sergeant who is not involved hopefully is dispassionate at that point and perhaps is in a better position to make a decision . . . . It's the hopes that cooler heads will prevail and neutralize the natural inclination of the officer to continue because the person is running from him.

The dissent to this section discounts Territo's testimony because "[a]n expert's opinion that some hypothetical officer would have chosen not to continue the chase, and therefore the accident would never have happened, does not provide the necessary link between

the City's failure to perform its ministerial duty and the damages in this case." Justice Geske's dissent at 337. However, Territo's testimony was not limited to a "hypothetical officer." Rather, he testified that under this specific fact situation, the City's defective policy was a substantial factor in causing Cavanaugh's injuries. Where more than one inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *Bennett*, 118 Wis. 2d at 705.

The dissent also criticizes Territo's testimony on the ground that it is mere speculation to conclude that the chase would have stopped prior to the accident had Andrade and his supervisor been properly informed by the City's policy. Since we have initially determined that the City is not immune from liability, we conclude that issues of causal negligence are properly for the jury's consideration. The United States Supreme Court in *Canton v. Harris*, 489 U.S. 378, 391 (1989), reached a similar conclusion when discussing the necessary showing of causation for a 42 U.S.C. § 1983 liability claim based on inadequacy of police training:

> Predicting how a hypothetically well-trained officer would have acted under the circumstances may not be an easy task for the factfinder, particularly since matters of judgment may be involved, and since officers who are well trained are not free from error and might perhaps react very much like the untrained officer in similar circumstances. But judge and jury, doing their respective jobs, will be adequate to the task.

The dissent addresses what it determines to be disturbing public policy implications of this opinion. The dissent states that a non-defective policy "would

encompass a presumption that continuation of pursuit is justified only for major offenses and those involving other violations should be terminated." Justice Geske's dissent at 338. Nothing in this opinion or in § 346.03(6) creates such a presumption. Section 346.03(6) only requires that law enforcement agencies have a pursuit policy that mandates that officers consider the severity of the crime when exceeding speed limits in pursuit of actual or suspected violators, not that the severity of the crime is dispositive in an officer's decision.

Further, this case is not about the propriety of high-speed chases and officers being stripped of their discretion.[10] The court should neither advance perceived public policy considerations nor decide the case based on these perceived considerations. The legislature has spoken by setting out the public policy considerations in § 346.03(6), which balance the need to apprehend suspects with the dangers inherent in high-speed chases. The legislature has determined that it is good public policy to require an officer engaging in a high-speed chase to consider the severity of the offense in relation to the danger posed by the chase. We agree with the dissent to this section that imposing such a balancing test may be difficult in the "compact and intense framework of a high-speed pursuit." Justice Geske's dissent at 332 n.1. Nevertheless, this is the determination mandated by the legislature, not this court.

---

[10] If it was, we would discuss the numerous policy reasons set forth by various commentators questioning the utility of high-speed chases. *See generally*, Richard G. Zevitz, *Police Civil Liability and the Law of High Speed Pursuit*, 70 Marq. L. Rev. 237 (1987); Erik Beckman, *High Speed Chases: In Pursuit of a Balanced Policy*, The Police Chief, Jan. 1983; Frank Kuznik, *Macho Mayhem*, The Washington Post Magazine, May 19, 1991.

Based on the above, we conclude that there is credible evidence to support the jury's verdict that the City was 23% causally negligent with respect to its defective pursuit policy. Therefore, we reverse the court of appeals' decision as to the City.

## IV. ANDRADE

### A. Immunity

We next consider the application of the defense of immunity to Andrade's alleged negligence. Cavanaugh argued at trial that Andrade was negligent in failing to terminate the pursuit and negligent with respect to the operation of his vehicle. Andrade asserts that the decisions to initiate and continue a high-speed pursuit are discretionary in nature and therefore entitled to immunity under § 893.80(4). Cavanaugh argues that even if the decisions to initiate and continue the pursuit are discretionary, and as such, normally entitled to immunity, the defense of immunity is not available when an officer negligently operates his or her vehicle contrary to Wis. Stat. § 346.03(5).

As we noted at the outset, a municipal officer is immune under § 893.80(4) for the performance of discretionary acts. *Kimps*, 200 Wis. 2d at 10. We agree with the court of appeals that an officer's decision to initiate or continue a high-speed chase is a discretionary act entitled to immunity. *Cavanaugh*, 191 Wis. 2d at 258, citing *Thornton v. Shore*, 666 P.2d 655, 667-68 (Kan. 1983). Several jurisdictions have recently recognized that an officer's decision to initiate and continue a high-speed chase is discretionary.[11]

---

[11] *See, e.g., Morgan v. Barnes*, 1996 WL 294411 *2 (Ga. App. 1996)(decision to pursue vehicle is discretionary); *City of Lan-*

Cavanaugh asserts that under § 346.03(5), discretionary act immunity is inapplicable if the officer fails to operate his or her vehicle "with due regard under the circumstances for the safety of all persons." We agree with Cavanaugh and the dissent that the failure to meet this standard constitutes negligence. *See* Justice Abrahamson's dissent at 324. However, even assuming Andrade was negligent with respect to the initiation or continuation of the chase, he is immune under § 893.80(4). Inherent in the decision to pursue is the decision to speed. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 655 (Tex. 1994).

However, nothing in § 346.03 provides that immunity afforded to the discretionary decision to initiate or continue a pursuit is subsumed by § 346.03(5). Although most states have adopted emergency-vehicle-operations statutes that are substantially similar to

*caster v. Chambers*, 883 S.W.2d 650, 655 (Tex. 1994)(initial decision to pursue and the pursuit involves officer's discretion) *Fonseca v. Collins*, 884 S.W.2d 63, 67 (Mo. App. 1994)(officer's decision to continue pursuit while seeking permission is discretionary); *Bachmann v. Welby*, 860 S.W.2d 31, 34 (Mo. App. 1993)(officer's decision regarding route and speed to travel in responding to all-points bulletin was discretionary); *Pletan v. Gaines*, 494 N.W.2d 38 (Minn. 1992)(an officer's decision to chase a fleeing suspect is "inherently" discretionary); *Colby v. Boyden*, 400 S.E.2d 184, 187 (Va. 1991)(exercise of discretion is involved "even in the initial decision to undertake the pursuit"); *Frohman v. City of Detroit*, 450 N.W.2d 59, 63 (Mich. App. 1989) (when officer "initiated pursuit, exceeded the speed limit . . . [and] discontinued pursuit . . . he was performing discretionary as opposed to ministerial acts."). We also note that Cavanaugh's counsel at oral argument agreed with the proposition that both the decisions to initiate and continue a pursuit are discretionary.

§ 346.03,[12] it does not follow that the state's immunity provisions are rendered inapplicable. We note that some jurisdictions have specifically applied provisions of immunity statutes while also recognizing the existence of the statutory equivalent to § 346.03(5).[13] In the absence of an expression of clear legislative intent to abolish discretionary act immunity in the context of § 346.03, we conclude that § 346.03(5) does not preclude the defense of immunity for the discretionary acts of initiating or continuing a high-speed pursuit. *See City of Lancaster*, 883 S.W.2d at 656 n.5.

Our holding that § 893.80(4) provides immunity for an officer's decision to initiate or continue a pursuit does not mean, as suggested by the dissent to this section, that officers are afforded blanket immunity from all liability by virtue of their involvement in a pursuit. We agree with the court of appeals that an officer may be negligent pursuant to § 346.03(5) for failing to physically operate his or her vehicle with due regard for the safety of others.

This distinction between an officer's discretionary decision to initiate and continue a pursuit and the physical operation of the vehicle has been recognized by other jurisdictions interpreting language similar to § 346.03(5). In *Kelly v. City of Tulsa*, 791 P.2d 826 (Okla. App. 1990), a son sued the city and police officer for wrongful death of his mother who was killed in a collision with a vehicle being chased by police. The

---

[12] *See* Isidore Silver, *Police Civil Liability*, § 3.01 and app. A (1995).

[13] *See City of Lancaster*, 883 S.W.2d at 656 & n. 5 (holding that the statutory equivalent to § 346.03(5) does not preclude application of an immunity statute). *Accord Colby*, 400 S.E.2d at 188; *Frohman*, 450 N.W.2d at 62-63.

court in analyzing the duty of due care under the equivalent of § 346.03(5) stated:

> [W]e find that the duty of due care created by the emergency vehicle statutes applies only to the operation of the emergency vehicle itself. The statutes exempt emergency drivers from certain operational "rules of the road," such as obedience to speed limits, parking restrictions and stop signals. The statutes recognize the public necessity for a fire, ambulance or police vehicle in an emergency situation to be *driven* unhindered by the traffic rules governing ordinary vehicles. . . . Plaintiff's real *objection is to* [the officer's] decision to initiate and continue police pursuit. This is not the consideration addressed by [the emergency vehicle statutes].

*Kelly*, 791 P.2d at 828.

In *Thornton*, similar to this case, a police officer pursued a speeding vehicle which ran stop signs and was driven recklessly until it collided with a third party. The Kansas Supreme Court, interpreting the same language contained in § 346.03(5), explained:

> To extend the "due care" requirement to the *decision* to chase or to continue the chase and hence make the officer the insurer of the law violator would emasculate the privileges and immunities afforded by [§ 346.03] and thwart the public policy purpose of the statute. . . . We conclude the "due care" requirement of [§ 346.03(5)] applies only to the police officer's physical operation of his own vehicle and not to the *decision* to chase or *continue to chase* a law violator.

*Thornton*, 666 P.2d at 667-68.

In sum, despite the general discretionary act immunity set forth in § 893.80(4), a negligence action may be sustained against an officer involved in a high-speed pursuit on the grounds that he or she breached the duty to operate the vehicle with "due regard under the circumstances" under § 346.03(5). However, the negligent operation under § 346.03(5) does not include the discretionary decisions to initiate or continue a pursuit; such discretionary decisions continue to be afforded immunity under § 893.80(4). With these general principles in mind, we turn to Andrade's alleged negligence.

## B. Causal Negligence

Although Cavanaugh proceeded on the theories that Andrade was negligent for continuing the chase and negligent in the operation of the vehicle, the case was properly submitted to the jury solely on the question of negligent operation. The jury answered "yes" to the following special verdict question: "At and immediately prior to the accident of January 13, 1989, was the defendant, Robert Andrade, negligent with respect to the operation of the motor vehicle." The jury also found that such negligence was a cause of the accident.

Cavanaugh argues that the jury could have properly found Andrade negligent because: (1) Andrade was driving too fast for conditions; (2) Andrade's speed may have caused Zergoski to drive faster; and (3) Andrade was following too closely. Additionally, Cavanaugh's complaint alleged that Andrade was negligent with respect to "lookout" and "management and control" of his vehicle. The court of appeals noted that there was testimony in the record that Andrade's speed may have been too fast for conditions and that the roads were

slippery with patches of ice. It concluded that this provided sufficient evidence to support the jury's finding of negligence. *Cavanaugh*, 191 Wis. 2d at 260.

Although it is necessary to discuss Andrade's alleged negligence in the operation of his vehicle in order to set the framework for determining whether such negligence was causal, we need not decide the issue of negligence based on the facts of this case. Because we conclude that the issue of causation is dispositive, we decline to further consider whether the evidence supports the jury's finding of negligence. *See Oakley v. Fireman's Fund of Wisconsin*, 162 Wis. 2d 821, 832 n.9, 470 N.W.2d 882 (1991)(Wisconsin appellate courts need not decide an issue if the resolution of another issue is dispositive).

Turning to the question of causation, we first address the evidence of negligence identified by both the court of appeals and Cavanaugh that Andrade engaged in excessive speeds or speeds too fast for conditions. As discussed above, reliance on this evidence is misplaced because it relates directly to Andrade's discretionary decision to continue the high-speed pursuit.

We next look to Cavanaugh's remaining arguments in support of the jury's verdict which properly relate to Andrade's alleged negligence in the physical operation of his vehicle. He asserts that Andrade failed to maintain management and control, was following too closely, and failed to maintain proper lookout. However, the fact that Andrade's vehicle was between one-half and one block behind Zergoski at the time of the accident and did not make any physical contact with either vehicle undercuts those arguments because they lack the causal connection necessary between the alleged negligence and Cavanaugh's injuries.

For example, Cavanaugh argues that the jury could have determined that Andrade was negligent in the operation of his vehicle with respect to management and control. The duty of management and control requires a driver to keep his or her vehicle under control so that when danger appears, the driver may stop, reduce speeds, change course, or take other proper means to avoid injury or damage. Wis JI—Civil 1105. Here, Andrade did not collide with either vehicle.

Cavanaugh also alleged that Andrade was following too closely. However, the nearest that any witness placed Andrade's vehicle behind Zergoski's vehicle at the time of the collision was one-half block. Operators of vehicles should space themselves at a distance that will ensure proper braking and reaction time in the event that the preceding vehicle slows or stops. *See* Wis JI—Civil 1112 "Operation of Automobile Following Another." This court has previously recognized that "the purpose of holding a trailing driver to a proper distance is to keep him in position to stop or so control his car as to prevent him from doing injury because of the action of the car ahead, whatever be the cause of that action . . . ." *Northland Ins. Co. v. Avis Rent-A-Car*, 62 Wis. 2d 643, 648, 215 N.W.2d 439 (1974)(quoted source omitted). Since Andrade did not collide with the preceding vehicles, any evidence regarding proper distances for braking or reaction time to prevent injury is irrelevant to the question of causation.

Cavanaugh's claim that the jury could have determined that Andrade was negligent as to lookout is also unpersuasive. A driver has the duty to exercise ordinary care to keep a careful lookout ahead and about him or her for other vehicles that may be within or approaching the driver's course of travel. Wis JI—Civil 1055. Again, even assuming *arguendo* that Andrade

was negligent in this respect, such negligence was not causal because Andrade did not collide with either vehicle. Andrade's failure to maintain proper lookout could not be a substantial factor in the accident because it would have occurred regardless of Andrade's negligent lookout.

■■

Based on the above, we conclude that there is no credible evidence in the record for a reasonable jury to find that any alleged negligence of Andrade with respect to the physical operation of his motor vehicle was a substantial factor in causing the accident. Accordingly, we reverse the court of appeals' decision affirming the jury's verdict finding Andrade 2% causally negligent and direct the circuit court to grant Andrade's motion for judgment notwithstanding the jury's verdict.

## V. STIPULATION/LIABILITY LIMIT

The parties also dispute the maximum amount of liability applicable in this case. The City argues that its liability is limited to $50,000 for each claim, pursuant to § 893.80(3). Cavanaugh contends that he is entitled to $250,000 under § 345.05(3), because the damages suffered resulted from Andrade's negligent operation of a motor vehicle. The State counters that even if § 345.05 applies, Andrade is bound by the oral stipulation of damages in the amount of $100,000.

Because we conclude that Andrade was not negligent in the operation of a motor vehicle, the $250,000 liability limit under § 345.05(3) is inapplicable in this case. Instead, § 893.80(3) provides the appropriate liability limit of $50,000 for each claim, for a total recovery of $100,000. As a result, we need not address

the issue of whether the parties' original stipulation of damages in the amount of $100,000 is binding.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded with directions to the circuit court to enter judgment consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*concurring in part and dissenting in part*). I join that portion of the majority opinion holding that the City is not immune from liability in this case and affirming the jury's verdict against the City. I disagree with that part of the majority opinion relating to the liability of the officer. I conclude that the court should affirm the court of appeals' decision affirming the jury's finding that the officer was negligent with respect to the operation of his motor vehicle during the chase.

As the majority observes, the general discretionary act immunity defense inscribed in Wis. Stat. § 893.80(4) is qualified by Wis. Stat. § 346.03. Section 346.03(5) warns that the operator of an emergency vehicle is *not* relieved "from the duty to drive with due regard under the circumstances for the safety of all persons" or "from the consequences of his or her reckless disregard for the safety of others."[1] Placed

---

[1] Wis. Stat. § 346.03(1) (1993-94) provides:

The operator of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law . . . may exercise the privileges set forth in this section, but subject to the conditions stated in subs. (2) to (5).

Wis. Stat. § 346.03(5) (1993-94) provides:

The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all

squarely within the section of the statutes prescribing the rules and regulations applicable to emergency road vehicles, Wis. Stat. § 346.03(5) makes clear that while emergency vehicle operators may on occasion disregard certain traffic rules, when they do so without "due regard under the circumstances for the safety of all persons," they are negligent.[2]

But having acknowledged that Wis. Stat. § 346.03(5) qualifies discretionary act immunity, the majority opinion abruptly reverses course.

First, the majority attempts to segregate an officer's decision to initiate or continue a pursuit from the question of whether that officer drives "with due regard under the circumstances for the safety of all persons." The majority concludes that an officer's decision to initiate or continue a pursuit—even when that pursuit is undertaken at high speeds through major intersections in a densely populated area—is automatically entitled to discretionary act immunity.

In short, while Wis. Stat. § 346.03(5) is designed to limit discretionary act immunity, the majority invokes

---

persons nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

Unless otherwise stated, all further statutory references are to the 1993-94 volume of the Wisconsin Statutes.

[2] Each year, between 50,000 and 500,000 "hot" pursuits occur in the United States. Between 6000 and 8000 of these pursuits result in crashes, killing between 300 and 400 people and injuring another 2000 to 2500. More than 90% of these pursuits are triggered by traffic violations; in less than 1% is a suspect wanted for violent crime. For discussions of high speed chases, see, e.g., Richard G. Zevitz, *Police Civil Liability and the Law of High Speed Pursuit*, 70 Marq. L. Rev. 237 (1987); Erik Beckman, *High-Speed Chases: In Pursuit of a Balanced Policy*, Police Chief, Jan. 1983, at 34; Frank Kuznick, *Macho Mayhem*, Washington Post, May 19, 1991 (Magazine), at 20.

discretionary act immunity to limit Wis. Stat. § 346.03(5). In rendering an officer's decision to initiate or continue a pursuit immune from liability, the majority creates an exception to the negligence statute which threatens to swallow the statute itself.

In contrast to the majority opinion, a number of state supreme courts interpreting provisions substantially similar to Wis. Stat. § 346.03(5) have concluded that a law enforcement officer is not immune from liability for a discretionary decision to give or not to give chase and that the negligence standard is applicable to the officer's conduct.[3]

Second, the majority converts the clear language of Wis. Stat. § 346.03(5) requiring an officer to "drive with due regard under the circumstances for the safety of all persons" into a requirement that an officer not be negli-

---

[3] *See, e.g., Tetro v. Stratford*, 458 A.2d 5 (Conn. 1983) (recklessness of operator of pursued car does not *ipso facto* relieve pursuing officers of liability for their negligent conduct in maintaining a police pursuit); *Mixon v. City of Warner Robins*, 444 S.E.2d 761 (Ga. 1994) (a law enforcement officer's decision to initiate or continue pursuit is negligent if unreasonable under the circumstances; "an officer's performance of his professional duty is not to be considered paramount to the duty that he owes to other members of the driving public"); *Lowrimore v. Dimmitt*, 797 P.2d 1027 (Ore. 1990) (law enforcement officer's decision to pursue not entitled to statutory immunity); *Haynes v. Hamilton Co.*, 883 S.W.2d 606 (Tenn. 1994) (when car pursued by law enforcement officers injures innocent third parties, officers' decision to commence or continue pursuit can provide grounds for negligence); *Mason v. Bitton*, 534 P.2d 1360 (Wash. 1975) (law enforcement officers have a responsibility to determine whether the purpose of a pursuit is justified by the accompanying risk; when such a determination is unreasonable, officers can be negligent).

gent in "the physical operation of the vehicle." Majority op. at 317-18.

Surely, as Maryland's highest court observed in interpreting a provision similar to Wis. Stat. § 346.03(5),[4]"[n]egligent operation of a car is not limited to the negligent manipulation of the gas pedal, steering wheel, or brake pedal." *Boyer v. State*, 594 A.2d 121, 129 (1991). "A decision to operate or continue operating the car, when a reasonable person would not due so, clearly can be 'negligent operation.' " *Id.*

Under the majority's interpretation of Wis. Stat. § 346.03(5), however, it is unclear if even the "manipulation of the gas pedal, steering wheel, or brake pedal" would provide grounds for finding a pursuing officer negligent, since the manner in which one accelerates, steers and brakes is integrally related to one's decision to initiate or continue pursuit. Indeed, a reader would be hard pressed to ascribe any concrete meaning to Wis. Stat. § 346.03(5) if, as the majority maintains, it refers to one negligent in "the physical operation of the vehicle." Any activity which might fit under this rubric might just as easily be described as an activity related to an officer's decision to pursue or not pursue.

Hence while the majority professes agreement with the court of appeals' conclusion that an officer remains liable on negligence grounds under Wis. Stat. § 346.03(5), majority op. at 317, the majority fails to follow the court of appeals' lead in upholding a jury verdict that the officer in this case was negligent with respect to the operation of his motor vehicle. Instead, the majority relies upon cases drawing "a distinction between an officer's discretionary decision to initiate

---

[4] Md. Transp. § 21-106(d) states that "[t]his section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons."

and continue a pursuit and the physical operation of the vehicle." Majority op. at 317-18. It is hard to imagine any decision pertaining to an officer's physical operation of a police vehicle that might not also be characterized as a discretionary decision entitling that officer to immunity. In short, according to the majority, even when officers engaged in high-speed chases are negligent, they are entitled to immunity.[5]

In concluding that police officers can be shielded from their negligent acts under the doctrine of official act immunity, the majority ignores the limiting language within the immunity statute itself, which states that "[w]hen rights or remedies are provided by any other statute against . . . any officer . . . such statute shall apply." Wis. Stat. § 893.80(5). An immunity statute's primary purpose is to insure that liability will not attach to governmental actors as a consequence of their

---

[5] Indeed, several of the cases relied upon by the majority so hold. *See, e.g., Frohman v. City of Detroit,* 450 N.W.2d 59, 62 (Mich. App. 1989) ("concept of immunity presupposes that acts complained of may have been negligently performed"; "even if an employee's performance of discretionary-decisional acts constitutes negligence, that employee is afforded immunity from liability" so long as the employee's acts are undertaken in good faith and the employee holds a reasonable belief that the acts are within the prescribed scope of authority); *Fonseca v. Collins,* 884 S.W.2d 63, 67 (Mo. App. 1994) (officer "is protected by official immunity for any negligent conduct arising out of the pursuit"); *Bachman v. Welby,* 860 S.W.2d 31, 34 (Mo. App. 1993) (police officer engaged in high-speed chase entitled to official immunity; therefore, "officer could not be held civilly liable for his alleged negligence in taking these actions"); *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Tex. 1994) (official immunity "protects officers from suit even if they acted negligently"); *Colby v. Boyden,* 400 S.E.2d 184 (Va. 1991) (police officers are immune from liability for acts of simple negligence).

actions. By definition, an officer who has not acted negligently will have no need of the protection which an immunity statute provides; it is only when an officer has acted negligently that an immunity statute might serve some purpose by providing relief from liability. Consequently, when, as is the case in this state, an immunity statute explicitly contemplates the prospect that immunity might be waived by other statutes, and when one of those other statutes explicitly states that officers engaged in high-speed chases are not relieved of liability for their negligent acts, this state's immunity statute is irrelevant. Under Wis. Stat. § 346.03(5), it matters not whether one characterizes the officer's decisions in this case as discretionary or ministerial. Neither formulation can shield an officer from the statutorily prescribed duty to "drive with due regard under the circumstances for the safety of all persons."[6]

In holding otherwise today, the majority not only shields officers from liability for their negligent conduct, but also shields municipalities from liability so long as those municipalities dutifully issue the guidelines required under Wis. Stat. § 343.05(6). Thus an innocent victim of a negligently conducted high-speed case will frequently be unable to collect damages from either the negligent officer or from the municipality for which that officer works.

Finally, the majority does not give sufficient deference to the jury verdict. In this case, the jury found the pursuing officer responsible for 2% of the victim's inju-

---

[6] Hence while it is true, as the majority notes, that counsel for the plaintiff agreed at oral argument before the court that a decision to initiate or continue a pursuit is discretionary, counsel immediately added that Wisconsin's emergency vehicle statutes were passed "without regard to discretionary decisions."

ries. "When there is any credible evidence to support a jury's verdict, even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict must stand." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 390, 541 N.W.2d 753 (1995) (citations omitted).

I conclude that credible evidence supports the jury's determination that the pursuing officer's decision to continue the pursuit was negligent.[7] For

---

[7] A causal connection can exist between an officer's alleged negligence and a victim's injuries even if the officer's own vehicle—as distinguished from the vehicle which the officer is pursuing—does not make "physical contact" with the victim.

Wisconsin has adopted the position set forth in the Restatement (Second) of Torts, § 447 (1965), that even when the intervening act of a third person is negligent, it is not a superseding cause of harm to another when an actor's own negligent conduct is a substantial factor in causing harm so long as the actor "at the time of his negligent conduct should have realized that a third person might so act." Restatement (Second) of Torts § 447(a) (1965); *Stewart v. Wulf*, 85 Wis. 2d 461, 476-77, 271 N.W.2d 79 (1978).

The decisions cited in the margin at note 3, for example, pertain to accidents which involved the pursued vehicle and an innocent third party but not the vehicle of the pursuing officer. The Texas Supreme State succinctly states the reason why such a fact pattern should not, *ipso facto*, lead to the conclusion that a pursuing officer is not negligent:

> Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence.*

example, the driver of the pursued vehicle stated that he would have stopped speeding and running red lights if the officer had stopped chasing him. In the report which police officer Dennis Pajot filled out on the accident giving rise to this case, the roads were described as "slippery" and "frosted with ice." Officer Pajot considered travel at 50-55 miles per hour too fast for conditions; evidence in the record suggests that at times both the pursuing and pursued vehicles were travelling at speeds above 70 miles per hour. The pursuing officer in this case testified that all he knew for certain was that the driver of the pursued vehicle had violated traffic laws. He also testified that he never considered terminating the pursuit. Furthermore, the plaintiff's expert Leonard Territo, who has written numerous books and articles on the subject of high-speed chases, testified that when the only infraction known to have been committed by the driver of a pursued vehicle is a traffic violation and when, as was the case here, the pursued vehicle is approaching a number of major intersections, an officer should consider terminating the pursuit.

Based on this record, a reasonable jury could have concluded that the officer's violation of the duty to drive with due regard under the circumstances for the safety of all persons was unreasonable and contributed to the subsequent accident. Because there is credible evidence supporting the jury's finding of causal negli-

_Travis v. Mesquite_, 830 S.W.2d 94, 98 (Tex. 1992) (emphasis added) (when car pursued by law enforcement officers collides with third vehicle, officers can be causally negligent). _See also Fiser v. City of Ann Arbor_, 339 N.W.2d 413 (Mich. 1983) (when pursued vehicle in a high-speed chase strikes a third vehicle, law enforcement officers' decision to initiate or continue a pursuit can be grounds for a finding of causal negligence).

gence against the pursuing officer, I would uphold the jury's verdict.

In overturning that verdict today, the majority may be creating a blanket rule immunizing both law enforcement officers and municipalities from liability whenever a high-speed chase precipitates a collision. While the legislature recognizes that police pursuit is often important and necessary, the legislature has not concluded that all chases are reasonable, regardless of the circumstances. Wisconsin's emergency vehicle statute displaces the presumption of negligence that ordinarily arises from a violation of traffic rules. As Wis. Stat. § 346.03(5) makes clear, it is not intended to shelter drivers of emergency vehicles from liability for their negligent actions.

The court should interpret and apply this statute as it is written and allow the trier of fact to assess whether an officer engaged in high-speed pursuit has driven "with due regard under the circumstances for the safety of all persons."

For the reasons set forth, I write separately.

JANINE P. GESKE, J. *(concurring in part and dissenting in part)*. I concur with that part of the opinion in which the majority concludes that Officer Andrade is entitled to immunity for his discretionary decisions made in relation to his pursuit of Zergoski. However, I write this dissent because I do not agree that the City can be held liable under the facts of this case.

Initially, it should be noted that the majority's conclusions on causation are built upon the foundation of its interpretation of the ministerial duty imposed by Wis. Stat. § 346.03(6). Throughout the opinion, the

majority makes repeated reference to the statute as mandating that officers consider the severity of the crime "upon *initiating or continuing a pursuit*." However, the statute contains no language concerning initiating or continuing pursuits. In fact, the statute refers only to providing written guidelines for its officers regarding "*exceeding speed limits* under the circumstances specified in sub. (4) [to obtain evidence of a speed violation or if responding to a felony in progress call] and when *otherwise in pursuit of actual or suspected violators*." Wis. Stat. § 346.03(6) (emphasis added). Nothing in the plain language of the statute refers to a point in time that an officer must evaluate certain factors, nor does it impose a mandate that successive reevaluations be conducted at set intervals.[1]

In particular, it is the section of the opinion on causation that prompts me to write this dissent. The majority concludes that there was credible evidence to support the jury's finding that the City was "causally negligent with respect to its defective pursuit policy." Majority op. at 315. It bases this conclusion on the testimony of Officer Andrade, his supervisor—Buechner, Zergoski, and in large part the plaintiff's expert witness Leonard Territo, who testified that he believed the failure of the City's policy to instruct its officers to consider the nature of the offense

---

[1] The compact and intense framework of a high-speed pursuit which often lasts, as in this case, only 3 to 4 minutes cannot be subjected to a mechanistic requirement which seems to contemplate a programmed review of a fixed checklist of factors. Unlike the timed back-up carried out by my computer, humans do not easily perform complex decision-making in a calculated manner, especially in instances where discretion is needed to react to a constantly changing situation.

was a substantial factor in causing Cavanaugh's injuries.

The majority correctly states that this court must uphold a jury's finding of fact if it is supported by any credible evidence or reasonable inferences therefrom. However, "it is impermissible to base a judgment on 'conjecture, unproved assumptions, or mere possibilities.'" *Merco Distributing Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 461, 267 N.W.2d 652 (1978) (quoting *Schwalbach v. Antigo Electric & Gas, Inc.*, 27 Wis. 2d 651, 655, 135 N.W.2d 263 (1965)). Further, " 'when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'" *Merco*, 84 Wis. 2d at 460 (quoting Prosser, *Law of Torts* 241 (4th ed. 1971)).

The majority mischaracterizes the causation analysis as hinging on whether Officer Andrade or his supervisor considered the severity of the crime despite the defective policy. Majority op. at 306. On the contrary, determination of cause is based on whether the breach was a substantial factor in causing the injury. I cannot agree with the majority that the credible evidence needed to establish this link was presented.

In order to establish the causal nexus in this case the plaintiff had to present evidence that the breach (the fact that the City's policy did not state that an officer must consider the severity of the crime in deciding whether to exceed the speed limit while pursuing a vehicle) was a substantial factor in causing the injury (Cavanaugh's death). In other words, the plaintiff had the burden to prove that: (1) if the written policy required officers to consider the severity of the crime, (2) then, Officer Andrade would have terminated the chase, and (3) Zergoski would have slowed down or

stopped his vehicle before reaching the intersection at 60th and Morgan thereby averting the collision.[2]

In order to sustain a finding of liability against the City, the court must find sufficient credible evidence in this record to support the conclusion that Officer Andrade would have terminated his pursuit if the written policy had included severity of offense as one of the factors he must consider. Yet, Officer Andrade, well aware of the multiple traffic violations he had observed both before and during the pursuit, testified that he never considered letting the fleeing vehicle simply speed away from him because, in his opinion, public safety (itself, a baseline statutory requirement)[3] was

---

[2] Contrary to the majority's suggestion, this dissent does not ignore the standard of causation and create a more onerous one. Majority op. at 310 n.8. Rather, it simply lays out in case specific terms the series of leaps that are *necessary* to prove a causal relationship between the alleged breach (the City's policy) and the injury. I remain unconvinced that there was credible evidence proving that the "defective policy" was a substantial factor in producing Cavanaugh's death. The abstract concept of causation as presented by the majority remains unproved because no concrete connection is made between the very physical realities of the absence of severity of offense in the guidelines and the automobile collision that took Cavanaugh's life.

[3] Wisconsin Stat. § 346.03(5) reads:

> The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive **with due regard under the circumstances for the safety of all persons** nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

(Emphasis added).

The plaintiff makes no claims that Officer Andrade was reckless in any manner.

best served by continuing the pursuit. Officer Andrade testified that he wanted to stay close to Zergoski's vehicle,

> to give warning to the public out there that this guy is coming through. People hear sirens out there. I didn't want to call it off at that time because I knew if he shot through any one of those lights right there and I wasn't close enough I knew nobody is going to hear him coming; and, if some innocent citizen were driving there through [sic], they would be hit by him and they wouldn't know it.[4]

Similarly, supervisor Buechner testified that Zergoski was driving in a dangerous manner and represented a danger to the public. Therefore, although he considered whether Officer Andrade should terminate the pursuit, he decided based on a number of factors, that the pursuit should not be terminated. Further,

---

[4] The majority recounts Officer Andrade's negative response to the plaintiff's question of whether he believed that the pursuit endangered others "on the road." The quoted language also demonstrates that the officer's belief was based on. the fact that there was no traffic "on the road *we were on*" at that time. Majority op. at 307-08 n.7.

I disagree with the majority's characterization of this testimony as "contrary" to Officer Andrade's statements that he felt Zergoski's reckless driving posed a risk to the public and that public safety was best served by staying behind the fleeing vehicle with emergency lights and sirens operating. I find nothing incompatible in the officer's belief both that the absence of traffic on that road he and Zergoski were on meant that no one on that road was endangered, and that vehicles (such as Cavanaugh's) on side streets were being put at risk by Zergoski's conduct. Officer Andrade's concern for cross traffic is evident in his testimony (quoted in the text above) and formed a reasonable basis for his decision not to terminate the pursuit.

despite the fact that Buechner did not use the exact words "I considered the severity of the offense," he testified that circumstances under which a pursuit could be terminated include: "[w]eather conditions, pedestrians or vehicle conditions, lighting conditions, the nature of the driving by the pursuit vehicle or by the driver of the pursued vehicle, possibly *the reason that this person was being pursued.*"

The plaintiff's expert, Territo testified that in his opinion officers who had been "properly informed" through a "non-defective policy" would have stopped the chase. Further, his opinion that Andrade's failure to terminate the pursuit was a substantial factor in causing the accident was based on his generic theory that removal of the incentive (pursuit) "invariably" leads to cessation of the dangerous driving behavior by one being pursued. Yet, under cross-examination, Territo admitted that his opinion on causation "*assumes* that Gary Allen Zergoski would have stopped driving recklessly when he noticed that Officer Andrade stopped pursuing him." This assumption is highly speculative, especially in light of the fact that Zergoski was speeding, driving recklessly, and had already run a red light *before* Officer Andrade began pursuing him.

In analyzing causation, the issue is not what some hypothetical officer would have done, but rather, whether this *specific officer* would have stopped pursuing Zergoski if the City had included "severity of the crime" in its policy. Although the expert's opinion on what the hypothetical officer would or should do under the facts of this case was clearly relevant to the issue of Andrade's alleged negligence, the majority correctly concludes that Officer Andrade is immune from liability. In determining whether the City can be held liable, we must search the record for evidence of a causal link

between the City's negligence and Cavanaugh's damages, and not for evidence of Officer Andrade's alleged negligence. In contrast to proof of negligence, which is based on standards of what the hypothetical "reasonable" person would have done under the circumstances, in order to establish causation, we must find credible evidence which can connect the actual conduct that has been found negligent by the specific defendant (here, the City's failure to perform its ministerial duty) to the plaintiff's damages.

An expert's opinion that some hypothetical officer would have chosen not to continue the chase, and therefore the accident would never have happened, does not provide the necessary link between the City's failure to perform its ministerial duty and the damages in this case. Neither can an expert simply opine, as did Territo, that "under the specific fact situation, the City's defective policy was a substantial factor in causing Cavanaugh's injury" and thereby create credible evidence to support his conclusion. There must be credible evidence in the record to support his opinion that if the City had included "severity of the crime" in the list of factors for an officer to consider when deciding to exceed the speed limit in pursuit of actual or suspected violators, Officer Andrade would have decided to let Zergoski get away and that therefore Cavanaugh's damages would not have occurred. There is no such evidence in the record. Cause was never established, and therefore, the City cannot be held liable.

Additionally, I feel that I must address disturbing public policy implications of the majority's opinion.[5]

[5] This court's perceptions of public policy considerations are highly relevant to our decisional process and, in fact, are often determinative. For example, this court commented in a recent decision that even though the jury had found the defendant

Under the standard advocated by Territo, and seemingly adopted by the majority, a "non-defective" pursuit policy would require officers to consider severity of offense, not only at the initiation of a pursuit but in an ongoing evaluation of whether to terminate. More importantly, it would encompass a presumption that continuation of pursuit is justified only for major offenses and those involving other violations should be terminated.[6]

The majority states that "nothing in [its] opinion or in § 346.03(6) creates . . . a presumption [that continuing pursuits can only be justified for major offenses]," and that the case is "not about . . . officers being stripped of their discretion." Majority op. at 314. Yet the majority relies on Territo's opinions on this very issue [the propriety of termination of pursuit given the specific facts of this case] to establish causation,

---

causally negligent, "liability does not necessarily follow. Public policy considerations may preclude liability. Whether public policy considerations should preclude liability in this instance is a question of law which we review de novo." *Gould v. American Family Mutual Ins. Co.*, 198 Wis. 2d 450, 460-61, 543 N.W.2d 282 (1996) (citations omitted). *See also Rockweit v. Senecal*, 197 Wis. 2d 409, 413, 541 N.W.2d 742 (1995); *Bowen v. Lumbermens Mutual Cas. Co.*, 183 Wis. 2d 627, 655-56, 517 N.W.2d 432 (1994); *Nelson v. Davidson*, 155 Wis. 2d 674, 679, 456 N.W.2d 343 (1990).

[6] Such a policy completely ignores the fact that in many pursuits, the officer has no way of knowing what offenses a fleeing suspect may have committed. This case provides an apt example, as Officer Andrade testified that on first seeing Zergoski speed through the red light he wondered why "this guy was fleeing so fast . . . . I thought maybe, possibly, somebody maybe could have been chasing him, maybe he could have hit and ran."

thereby at least implicitly engrafting limitations upon police discretion.

Territo testified that he was not critical of Officer Andrade's decision to initiate pursuit, that in fact, Officer Andrade "would have been derelict in his duty if he had not attempted to stop [Zergoski]." The plaintiff's expert based his criticism of Officer Andrade (and of the City's policy) on the officer's failure to terminate the pursuit. Territo testified that if the City's policy included severity of the crime, Andrade and his supervisor would have been informed that a less severe offense, such as a traffic violation, would result in greatly diminished latitude as opposed to chasing a person wanted for murder. I agree with the majority that § 346.03 does not contemplate that an officer's latitude or discretion should be "diminished" during a chase on the sole basis of the severity of offense, but remain concerned that the message conveyed by the majority opinion does just that by affixing liability under the circumstances of this case.

While in pursuit, Officer Andrade *knew* that the fleeing party had committed several offenses, including speeding, running a red light and stop signs, weaving, "fishtailing" and other indicia of reckless driving, and he *suspected* drunken driving.[7] Additionally, Officer Andrade testified that Zergoski's driving was reckless and in his opinion posed a "risk to the public." If the policy advocated by Territo were adopted, it would seemingly require officers to terminate pursuit of persons whom they know to be driving recklessly, whom they suspect are driving while intoxicated, and whom

---

[7] In fact, after Zergoski was captured he was charged with causing great bodily harm by intoxicated use of a vehicle, possession of cocaine, operating after revocation of driving privileges, and fleeing an officer.

they feel pose a risk to the public. What would happen if an officer applying this policy ceased a pursuit and the fleeing driver continued driving in a dangerous fashion and struck a pedestrian a few blocks later? It would not be at all farfetched to foresee the City finding itself in the position of defending a negligence claim based on failure to protect the public from a known risk.

A policy that requires officers to cease pursuing those who are driving recklessly and speeding would only seem to encourage people bent on eluding the police to persist in such behavior. Rather than making our streets safer, such a policy has the potential to backfire and actually promote dangerous evasive driving.

There is nothing in Wis. Stat. § 346.03(6) that indicates that the legislature intended that officers should be stripped of the discretion to pursue unless they know the fleeing suspect has committed offenses in addition to those observed. As the majority pointed out in its conclusion on the City's negligence, the statute requires that the policy consider the severity of the crime with respect to pursuing at excessive speeds. Nothing in the statute mandates that the City have a policy requiring an officer, after observing highly dangerous driving behavior, to discontinue a chase if the officer thinks that the fleeing driver is unlikely to voluntarily stop. I think this court should be hesitant to judicially impose such restrictions.

For the reasons stated above, I respectfully dissent from that portion of the opinion concluding that the City is causally liable for Cavanaugh's injuries.

I am authorized to state that Justice Donald W. Steinmetz and Justice Jon P. Wilcox join in this concurring/dissenting opinion.